**Helen H. BALMER, Plaintiff,**

v.

**The COMMUNITY HOUSE ASSOCIATION OF BIRMINGHAM, Defendant.**

**Civ. No. 82–72974.**

United States District Court, E.D. Michigan, S.D.

Sept. 9, 1983.

J. Kent Cooper, Detroit, Mich., for plaintiff.

John J. Nora, Nora & Essad, Plymouth, Mich., for defendant.

## MEMORANDUM OPINION

CHURCHILL, District Judge.

The defendant's motion entitled "Motion to Strike the Jury Demand for Damage Issues Pertaining Singularly to Michigan's Elliott-Larsen Civil Rights Act, M.C.L.A. § 37.2101 *et seq.* and to Limit Damages to Avoid Double Recovery" was heard on June 30, 1983. The motion to strike the jury demand was denied for reasons set forth on the record.

The motion to limit damages to avoid a double recovery under the federal Age Discrimination in Employment Act of 1967, § 2 *et seq.,* as amended, 29 U.S.C. § 621 *et seq.,* (ADEA)[1] and the Michigan Elliott-Larsen

---

1. The enforcement provision of ADEA provides for relief as follows:

"Amounts owing to a person as a result of a violation of this chapter shall be deemed to be unpaid minimum wages or unpaid over-

Civil Rights Act[2] was taken under advisement at the conclusion of oral arguments. Although the defendant appears to confuse the words compensatory damages with punitive or exemplary damages, the motion does frame interesting issues concerning the interrelation between state and federal remedies for the same wrongful act of age discrimination.

The parties did not have the benefit of *Hill v. Spiegel,* 708 F.2d 233 (6th Cir.1983), decided on May 31, 1983. *Hill* seems to establish several propositions relevant to this case. First, compensatory damages and actual damages for loss of wages and income are the same thing and recoverable under the ADEA. Second, in light of the limited remedial scheme of the ADEA, pain and suffering are not compensable. Finally, in *Hill* evidence of pain and suffering was so prejudicial to the ADEA issues that a new trial was ordered. *Id.* at 236.

Compensatory damages for pain and suffering appear to be recoverable under the Elliott-Larsen Act. *Freeman v. Kelvinator, Inc.,* 469 F.Supp. 999 (E.D.Mich.1979). Judge Feikens concluded that compensatory damages may be recovered for mental anguish and the indignity of discrimination. The Court reasoned that the inclusion of "injury" in the enforcement provision indicated "that additional recovery should be possible for any damages in excess of pecuniary loss." *Id.* at 1004.

Exemplary damages are also recoverable under Elliott-Larsen.[3] *Ledsinger v. Burmeister,* 114 Mich.App. 12, 318 N.W.2d 558 (1982).

This creates two dilemmas. First is the overlap of the ADEA liquidated damages and the Elliott-Larsen exemplary damages. Second, admissible evidence under Elliott-Larsen is prejudicial almost as a matter of law insofar as it may affect ADEA issues. *Hill v. Spiegel,* 708 F.2d at 236. The kind of tearful evidence cited in *Hill* is the kind of evidence that would normally be offered.[4]

time compensation for purposes of sections 216 and 217 of this title: *Provided,* That liquidated damages shall be payable only in cases of willful violations of this chapter."
29 U.S.C. § 626(b).

2. Section 37.2801 of the Michigan Elliott-Larsen Civil Rights Act provides:

"(1) A person alleging a violation of this act may bring a civil action for appropriate injunctive relief or damages, or both.

. . . .

"(3) As used in subsection (1), 'damages' means damages for injury or loss caused by each violation of this act, including reasonable attorney's fees."
Mich.Comp.Laws Ann. § 37.2801 (Supp.1983).

3. *See Bailey v. Graves,* 411 Mich. 510, 515, 309 N.W.2d 166, 168 (1981) (exemplary damages are justified only when defendant's conduct is malicious or so willful and wanton that it demonstrates a reckless disregard for plaintiff's rights).

4. The testimony of Mildred Hill on pain and suffering was, in part, as follows:

"Q. Will you briefly tell the jury what your observations were when you saw him that day after he had learned that he was fired?
"A. All right. February 26th was very soon after the death of my mother. She had passed away just a couple of weeks before

that. I was at home. He didn't call me. He came home suddenly in the middle of the morning. I guess about 10:30 or 11:00 o'clock, which was abnormal, and when he came in I was surprised. I thought that he was leaving to go out of town. I had no knowledge of anything happening.
"Q. Excuse me. Well, please continue.
"A. He came in. He was white and he was cold, and he told me in very brief words that he had been fired. I didn't know it was coming. I wasn't prepared for it. I was—I really didn't know how to handle it.

. . . .

"The next day he got up at the normal time that he would have gotten up had he been going to work. He went through the normal routine of preparation, bath and so forth, shaving, came downstairs, dressed to go to work, tie, white shirt, dress clothes, had his breakfast and went over to a desk which was adjacent to the kitchen. There is a telephone there. He sat at the desk. That is what he did, he sat at the desk all day. He had pencils and some writing materials there to write on. He sat at the desk. I tried to talk to him. I went to one side of him and tried to engage him in conversation. It was difficult. It was hard to get a conversation going.
"Q. Did you observe any change in the conduct of the children?
"A. My children?
"Q. Yes.

If the court takes away exemplary damages as being inconsistent with the limited federal remedy and denies evidence to support a claim for pain and suffering, this will leave almost nothing to be gained from pleading the Elliott-Larsen theory. The plaintiff would be deprived of an appropriate remedy for pain and suffering.

To resolve this dilemma, the Court will exercise discretion under *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218, to dismiss the pendent state claim without prejudice.[5] This will moot the defendant's motion to strike the jury demand and to limit damages to avoid double recovery.

An appropriate order will be entered.

"Q. What did you observe?

"A. My youngest one, my youngest daughter cried. She didn't really understand. They both did cry. They both broke away from their friends. They didn't want to talk to or participate in things with their friends. The oldest one was hurt the most.

"Q. Who is that?

"A. Alice. She dropped all after-school functions. They both continued in school, though. One is nine and one is 15. Alice was hurt the most. She absolutely refused to do the things she had been doing with her friends in the after-school hours. She dropped out of a community band that she was involved with. She was involved at the time in painting some fireplugs around town for the Bicentennial celebration. She refused to do any more in that direction at all.

"Finally, she stayed at home. She just stayed at home every evening. Her friends, when we did leave Marion where we have lived all of her life, wanted to give her a going-away party. When she learned of it she didn't want to go. I had to make her go, almost force her to go to her own going-away party."

708 F.2d at 236 n. 1.

5. The statute of limitations is tolled during the time a suit is commenced, and the court has jurisdiction over the defendant until the suit is dismissed without prejudice. *Smith v. Bordelove,* 63 Mich.App. 384, 386, 234 N.W.2d 535, 536, *leave denied,* 395 Mich. 772 (1975).