**Ralph BAILEY, Plaintiff,**

v.

**CONTAINER CORPORATION OF AMERICA, Defendant.**

**Civ. A. No. C–1–84–878.**

United States District Court, S.D. Ohio, W.D.

Jan. 23, 1986.

James B. Helmer, Jr., Cincinnati, Ohio, for Ralph Bailey.

James A. Moore, Lindhorst & Dreidame, Cincinnati, Ohio, for Container Corp. of America.

Robert J. Brown, Smith & Schnacke, Dayton, Ohio, for Appeal and Motion for Fees.

## MEMORANDUM

DAVID S. PORTER, Senior District Judge.

This age discrimination case is before the Court on the parties' cross-motions for post-trial relief. On May 23, 1985, a jury returned a verdict against the defendant in this case finding that plaintiff had been wrongfully discharged in willful violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623. The jury also found that the defendants had violated Ohio Revised Code § 4101.17 by discharging plaintiff. By judgment entered May 28, 1985, the Court awarded plaintiff $43,411.69 in back pay, lost pension, insurance and other benefits; $43,411.69 in liquidated damages, and $175,000 in punitive damages. The parties have filed timely motions for the following post-trial relief.

Plaintiff, by way of equitable relief seeks an order of reinstatement into the defendants' pension plan, and an award of front pay. By way of legal relief, plaintiff seeks an award of prejudgment interest on his state law claim.

Defendant seeks an order pursuant to Fed.R.Civ.P. 50(b) for judgment notwithstanding the verdict, or, in the alternative, for a new trial on the grounds that the jury's verdict awarding plaintiff liquidated damages under the ADEA and punitive damages under the state claim are without substantial support in the evidence and are, as well, contrary to the clear weight of the evidence; for a new trial pursuant to Fed. R.Civ.P. 59 on grounds that the trial court erred to the substantial prejudice of the defendant in excluding exhibits proffered as Defendant's Exhibits D and E; and for a new trial, or in the alternative, for an order of remittitur, pursuant to Fed.R.Civ.P. 59 on grounds that the jury's verdict awarding liquidated damages is excessive, without substantial support in the evidence, and was the result of passion and prejudice.

A hearing was held October 3, 1985 on the parties' motions. At that time, plaintiff presented witnesses and submitted exhibits on the issue of prejudgment interest. An additional hearing was subsequently scheduled for December 30, 1985. At that time, the parties were again permitted to present evidence on the issue of prejudgment interest, in conformity with the strictures set forth in *Whittington v. New Jersey Zinc*, 775 F.2d 698 (6th Cir.1985).

The Court has carefully reviewed the parties' post-trial submissions (docs. 48–54) and the applicable law. For reasons that follow, defendant's motion for a remittitur is partially granted, and the remainder of its motions denied. Plaintiff's motion for prejudgment interest is partially granted, and its motion for reinstatement into the pension plan interest is granted, and the remainder of his motions denied.

We will discuss the defendant's motions first. Initially, defendant has filed a motion pursuant to Fed.R.Civ.P. 50(b) for judgment notwithstanding the verdict, or in the alternative, for a new trial. In passing on this motion, we view the evidence in a light most favorable to the plaintiff. Only if reasonable minds could arrive at but one

conclusion should the motion be granted. *Pike v. Benchmaster Manufacturing Co.*, 696 F.2d 38, 40 (6th Cir.1981); *Price v. Firestone Tire & Rubber Co.*, 321 F.2d 725, 726 (6th Cir.1963); *Vance v. Billingsly*, 487 F.Supp. 439, 441 (E.D.Tenn.1980) ("The question is purely one of law and may properly be determined on a Rule 50(b) motion.")

A motion for a new trial should only be granted when the verdict is against the clear weight of the evidence. *National Polymer Products v. Borg-Warner Corp.*, 660 F.2d 171, 178 (6th Cir.1981).

In support of its motion, defendant argues that an award of liquidated damages under the ADEA requires proof of willful misconduct by the employer, and that punitive damages under plaintiff's state claim requires proof of malice.

■ Defendant concedes that under the rule of *Trans World Air Lines, Inc. v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985), an employer is guilty of a willful violation of the ADEA if the defendant acts with reckless disregard of the requirements of the ADEA. *Id.*, 105 S.Ct. at 624. In this case, the jury was instructed explicitly as to this standard. *Jury Instructions* at 12. Moreover, we find that there existed sufficient evidence for a reasonable jury to find that the defendant indeed acted with "reckless disregard" for the requirements of the ADEA, and that this is an appropriate case for liquidated damages.

■ Punitive damages under the state law claim may be awarded where a party intentionally and with actual malice injures another. Actual malice means anger, hatred, ill-will, hostility against another, a spirit of revenge or wanton or reckless disregard of the legal rights of another. *Leichtamer v. American Motors Corp.*, 67 Ohio St.2d 456, 471, 424 N.E.2d 568 (1981); *Columbus Finance, Inc. v. Howard*, 42 Ohio St.2d 178, 325 N.E.2d 654 (1975).

The jury was instructed accordingly on the law. *Jury Instructions* at 13. Moreover, there was sufficient evidence upon which the jury could predicate a punitive

damages award. Also, neither the liquidated damage award, nor the punitive damage award is against the clear weight of the evidence. Defendant's Rule 50(b) motion is thus without merit, and is hereby denied.

■ Defendant next moves this Court for a new trial pursuant to Rule 59 on grounds that the Court erred in excluding defendant's proffered Exhibits D and E. Our starting point in consideration of defendant's motion is Fed.R.Civ.P. 61, which states:

> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or setting aside the verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

Defendant's proffered Exhibits D and E were excluded by the Court pursuant to Fed.R.Civ.P. 37(b)(2), which states in pertinent part:

> (2) If a party ... fails to obey an order to provide or permit discovery ... the Court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
>
> . . . . .
>
> (B) An order ... prohibiting [the disobedient party] from introducing designated matters in evidence.

Proffered Exhibits D and E were personnel documents relating to two other former employees of defendants. On February 27, 1985 this Court ordered defendant to produce documents requested by plaintiff. Exhibits D and E were within the scope of the Court's Order, but were not produced until plaintiff, on April 25, 1985, specifically requested them. Even then, the files

were not produced until May 18, 1985, the Saturday before the trial. Plaintiff's counsel timely objected to the introduction of this evidence, and upon consideration, the Court excluded the files. We do not now find that the Court's earlier determination was "inconsistent with substantial justice."

■ Moreover, the exclusion of the documents in question did not harm the defendant. Mr. Booth, who made the files, was permitted to review the files and to testify as to the contents of the files.

We thus find defendant's second motion to be without merit, and therefore it is denied.

Defendant finally moves for an order of remittitur, pursuant to Rule 59 on grounds that the jury's verdict awarding liquidated damages and punitive damages is excessive, without substantial support in the evidence, and was the result of passion and prejudice. Defendant submits that a remittitur is an appropriate remedy in the event we deny its motion for a new trial. Alternatively, defendant argues that plaintiff's claim for back pay reflected certain wage increases that should not have been included. Defendant's arguments for a remittitur are without merit. We dismissed its arguments for a new trial above, upon which the instant motion is partially based, and moreover, we find that the back pay award was not "contrary to all reason." *Manning v. Altec, Inc.*, 488 F.2d 127, 133 (6th Cir.1973), *quoting Taylor v. Washington Terminal Company*, 409 F.2d 145, 148 (D.C.Cir.), *cert. denied*, 396 U.S. 835, 90 S.Ct. 93, 24 L.Ed.2d 85 (1969).

However, we are inclined to grant defendant's motion for remittitur on another ground. It is clear to us that the jury's verdict awarding to the plaintiff liquidated damages on his federal ADEA claim, and the award of punitive damages on his state law claim constitutes a double recovery.

■ Liquidated damages, despite being characterized by some courts as compensatory in nature, *Merkel v. Scovill, Inc.*, 570 F.Supp. 141 (S.D.Ohio 1983); *see also Heiar v. Crawford County*, 746 F.2d 1190 (7th Cir.1984), *cert. denied*, 472 U.S. 1027, 105 S.Ct. 3500, 87 L.Ed.2d 631 (1985), are

actually intended to have a punitive effect. *Trans World Air Lines, Inc. v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985). In *Trans World Air Lines*, the Supreme Court determined that the proper standard of willfulness required to support an award of liquidated damages is "reckless disregard" of the requirements of the ADEA. The court reached its conclusion by reasoning first that "[t]he legislative history of the ADEA indicates that Congress intended for liquidated damages to be punitive in nature." *Id.*, 105 S.Ct. at 624. Because of various problems involved with imposing criminal sanctions in the context of the age discrimination act, the Court found that Congress ultimately decided that "double damage liability" be substituted as a deterrent for willful violations. *Id.*

■ Moreover, while the double damage award may be intended to compensate for "nonpecuniary" loss that is difficult to prove, *Merkel, supra*, at 150, the Act permits courts to impose double damages without a showing of specific injury, and simply upon a showing of willfulness. The jury in this case was instructed as to that very fact. See *Jury Instructions* at 12. *See* 29 U.S.C. § 626. Common sense tells us that liquidated damages constitute a recovery that is punitive in nature. Therefore, in order to avoid the award of a duplicative recovery in the present case, plaintiff's recovery of punitive damages under its state law claim will be offset by his recovery of liquidated damages under the federal claim.

We are mindful of plaintiff's appealing argument that the jury properly took into account its award of liquidated damages, and reduced its award of punitive damages accordingly. However, plaintiff's argument does not persuade us that the jury actually took into account liquidated damages when awarding the state punitive damages. It remains clear to us that the jury's award was duplicative.

We find the cases that hold that liquidated damages are compensatory in nature do not control the instant case. For exam-

ple, in *Merkel v. Scovill, Inc., supra*, this Court was not faced with the instant problem of whether state punitive damages and liquidated damages offset each other since the jury in that case awarded state *compensatory* and not state punitive damages. The court determined that liquidated damages could be construed to be compensatory in nature, and reduced the state award to avoid the prospect of awarding double damages. *Id.* In *Merkel* the Court was essentially concerned not with the issue of how to characterize liquidated damages under the ADEA, but rather with avoiding the award of a double recovery to the plaintiff. This view of *Merkel* is shared by the court in *Garry v. TRW, Inc.*, 603 F.Supp. 157, 161 (N.D.Ohio 1985) in which the court stated that "liquidated damages under the ADEA and compensatory and punitive awards under Ohio law present the possibility of overlapping and duplicative awards." *Id.* at 161, *citing, Merkel, supra.* Further, see *Balmer v. Community House Ass'n of Birmingham*, 572 F.Supp. 1048, 1049 (E.D.Mich.1983) in which the court recognized the potential overlap between ADEA liquidated damages and state exemplary or punitive damages.

Other courts that have held that liquidated damages are compensatory in nature, *see Heiar, supra,* and cases cited therein, dealt with the issue of whether the liquidated damages award comprehends damages for prejudgment interest. In any event, the issue has been finally laid to rest by the Supreme Court's holding in *Trans World Air Lines, Inc., supra,* that liquidated damages are indeed a substitute for punitive damages, and are intended to deter willful violations of the ADEA.

We hold, therefore, that the jury's award of state punitive damages and ADEA liquidated damages in the present case constitutes a double recovery for the plaintiff. Plaintiff's state punitive damage award is therefore reduced by the amount of the liquidated damages award.

We next turn to consideration of plaintiff's post-trial motions. Plaintiff first seeks an order granting him front pay and benefits for a period of two years following his unlawful discharge. Plaintiff argues that such relief is necessary to make him whole, and is within the discretion of the Court to award under the ADEA. Plaintiff directs us to the following language in the ADEA to support his position:

> In any action brought to enforce this chapter the court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter, including without limitation judgments compelling employment, reinstatement or promotion ...

29 U.S.C. § 626(b).

■ It is crystal clear from the above-quoted language that the ADEA gives to district courts broad remedial powers, both legal and equitable, to correct violations of the act. *Albemarle Paper Company v. Moody*, 422 U.S. 405, 421, 95 S.Ct. 2362, 2373, 45 L.Ed.2d 280 (1975); *Davis v. Combustion Engineering*, 742 F.2d 916, 922–23 (6th Cir.1984) (citations omitted). *Koyen v. Consolidated Edison Co. of New York*, 560 F.Supp. 1161, 1168 (S.D.N.Y.1983). *See also Maxfield v. Sinclair Int'l.*, 766 F.2d 788 (3d Cir.1985). Moreover, reinstatement of an aggrieved employee into his prior position is well within the scope of equitable powers given to the Court. Reinstatement may not always be feasible however. "There may be no position available at the time of judgment or the relationship between the parties may have been so damaged by animosity that reinstatement is impracticable." *Maxfield v. Sinclair Int'l, supra* at 796 (citations omitted). In such cases, front pay is an equitable alternative to reinstatement and is consistent with the make whole provisions of the ADEA. *Id., citing, Wittlesey v. Union Carbide Corp.*, 742 F.2d 724, 728 (2d Cir.1984). *See also Davis v. Combustion Engineering, supra.* This circuit has specifically endorsed front-pay as an appropriate remedy under the ADEA. *Davis, supra,* but has also reserved for the sound discretion of the trial court to fashion front-pay relief. *Id.* at 923.

■ This case is not an appropriate one for an award of front-pay. Courts have held that since front-pay awards are de-

signed to take the place of reinstatement when reinstatement is impracticable, factors such as the age of the plaintiff, and his or her likelihood of finding alternative employment appear to influence whether front-pay relief should be awarded. Thus, in *Davis v. Combustion Engineering, supra* at 922, the Court held that front pay was an appropriate remedy under the ADEA, but stated:

> We emphasize, however, that an award of front pay must be governed by the sound discretion of the trial court and may not be appropriate in all cases. For example, the award of front pay to a discriminatorily discharged 41 year old employee until such time as he qualifies for a pension might be unwarranted.

*See also Loeb v. Textron, Inc.,* 600 F.2d 1003 (1st Cir.1979); *Koyen v. Consolidated Edison Co. of New York, Inc., supra.* Further, in *Loeb* the Court noted that court-ordered "payments in lieu of reinstatement ... have been relatively small and have been designed to assist plaintiff during the period in which he can be expected to find other employment." *Loeb, supra* at 1023. Turning to the facts of the instant case, we find that plaintiff was 41 years old at the time of his discharge, and has secured new employment. Those facts simply do not provide grounds for an award of front pay. Front-pay relief is not requested to compensate plaintiff for lost wages in lieu of reinstatement, which is the essence of front-pay relief, but rather to permit plaintiff to "catch-up" in his new job to what he would otherwise be earning had he continued to be employed by defendant (doc. 51 at 7).

Moreover, to award such damages in the present case would involve the court in a highly speculative endeavor. While a typical front-pay award, which is based on "the estimated present value of lost earnings that are reasonably likely to occur between the date of judgment and the time when the employee can assume his new position," *Petterson v. American Tobacco Co.,* 535 F.2d 257, 269 (4th Cir.), *cert. denied,* 429 U.S. 920, 97 S.Ct. 314, 50 L.Ed.2d 286 (1976), is not overly difficult to calculate, speculation on a sum designed to permit the plaintiff to "catch-up" to the position in which he might have been absent his unlawful discharge is an endeavor involving too many unknown and ever-changing variables for us to work out with satisfactory accuracy.

For all the foregoing reasons, we therefore find that this is not an appropriate case for front-pay relief, and deny this ground of plaintiff's motion for post-trial relief.

■ Plaintiff further moves for an order that defendant reinstate him in its pension plan and make all contributions necessary for plaintiff to vest in defendant's pension plan. Clearly, the ADEA encompasses such relief. *See* 29 U.S.C. § 626(b). Moreover, damages for lost pension rights fall within the category of equitable relief permitted by the Act. *Geller v. Markham,* 635 F.2d 1027, 1036 (2d Cir.1980), *cert. denied,* 451 U.S. 945, 101 S.Ct. 2028, 68 L.Ed.2d 332 (1981).

Plaintiff's motion, however, presents a novel question for the Court. We have found cases in which aggrieved parties have been reinstated into the Company's pension plan, *see e.g., Merkel v. Scovill, supra,* but the parties have not directed us to, nor have we found any cases such as this one in which the plaintiff seeks reinstatement into the pension plan without the accompanying reinstatement to his former position of employment.

It makes eminent sense that in ordering reinstatement of employment the Court order an employer to make contributions to a pension plan sufficient to put the plaintiff in a position he would have maintained but for his or her unlawful discharge. It is equally sensible to require an employer to make contributions to the pension plan sufficient to vest the plaintiff's rights in the plan even in the absence of reinstatement to employment. The facts of this case clearly warrant an order of such relief. Mr. Bailey worked for Container Corporation since he was 19 years old. He worked at the same facility for 22 years. Container Corporation bought the facility in 1973 and made regular contributions on behalf

of its employees into its pension plan. Mr. Bailey needed to work 10 years to vest in their pension plan, and at the time he was discharged he had worked under Container Corporation's salary plan for nine years.[1]

It appears to us quite plainly that in order to make Mr. Bailey whole, an equitable order from this Court requiring Container Corporation to contribute an amount to its pension plan necessary to vest Mr. Bailey's rights is appropriate. This order will not in any way prejudice the rights of other beneficiaries of the plan, since all we are requiring Container Corporation to do is make contributions to the plan that would have been made anyway in the absence of Mr. Bailey's wrongful discharge. In this way, Mr. Bailey will receive a pension at age 65, an emolument of employment he worked twenty-two years, nine years with Container Corporation, to achieve.

 The final issue with which we are confronted is whether plaintiff is entitled to an award of prejudgment interest on his state law claim. Ohio Revised Code § 1343.03(C) governs the award of prejudgment interest and pursuant to that statute a hearing was held on October 3, 1985 and December 30, 1985 to permit the parties to present evidence on the issue of prejudgment interest.

As an initial matter we have no trouble finding that plaintiff's $175,000 punitive damages award is not within the scope of O.R.C. § 1343.03(C). Our conclusion rests on the principles carefully discussed in *Presrite Corporation v. United Steelworkers,* No. 48113 (Cuyahoga County Ct.Ap. June 6, 1985). There, the court held that § 1343.03(C) only applies to compensatory damages.

Because § 1343.03(C) abrogates a longstanding common-law doctrine, it must be strictly construed. 'An intention of the General Assembly to arogate common-law rules must be manifested by express language.' *F[R]antz v. Maher* (1957), 106 Ohio App. 465 [155 N.E.2d

471] (citations omitted). See generally 50 Ohio Jr.2d, Statutes at 284–286 (1961). And, strict interpretation is particularly appropriate for § 1343.03(C), inasmuch as the General Assembly made only a limited exception to the common-law rule against pre-judgment interest, rather than repealing it altogether.

. . . .

The universal refusal to grant prejudgment interest on an award of punitive damages has a sound basis in legal principles, as such an award of prejudgment interest would serve neither the purposes of prejudgment interest nor the purposes of punitive damages. Prejudgment interest, of course, is designed to serve as 'compensation or indemnity for the use or detention of money due or found to be due.' 30 Ohio Jr.3d, Damages 96 at 107 (1981); see C. McCormick, Handbook on the Law of Damages at 55–57 (1935). An award of prejudgment interest is thus intended as compensation for the plaintiff's lost use of funds during the time between the infliction of damage and the plaintiff's recovery. In contrast, punitive damages are not intended to serve any compensatory purpose. 'It must be continually emphasized that punitive damages are assessed over and above that amount adequate to compensate the injured party. As such, they are nothing less than a windfall to any plaintiff who receives them.' *Ranells v. City of Cleveland* (1975), 41 Ohio St.2d 1 [321 N.E.2d 885]. 'Exemplary or punitive damages are awarded by way of punishment of the offender and as a warning to others, and not by way of compensation.' *Foust v. Valleybrook Realty Co.* (1981), 4 Ohio App.[3d]2d 164 [446 N.E.2d 1122]. *Accord e.g.,* 30 Ohio Jr.3d, Damages at 147–148 (1981); W. Prosser, Law of Torts 9 (4th ed. 1971); *Note,* Exemplary Damages in the Law of Torts, 70 Harv.L. Rev. 517 (1957).

---

**1.** According to plaintiff Bailey's summary of personnel benefits, he would have vested in Container Corporation's pension plan on August 30, 1983. Mr. Bailey was terminated June 30, 1982.

Awarding prejudgment interest on punitive damages, however, serves neither the compensatory purposes of prejudgment interest nor the exemplary purposes of punitive damages. Prejudgment interest is purely compensation for the plaintiff's lost use of funds after its cause of action accrues and before its recovery; under § 1343.03(C), that compensatory payment of prejudgment interest is due only when the defendant, through its lack of good faith effort to settle the case, is partially responsible for the delay in plaintiff's recovery of the compensatory damages. But because an award of punitive damages is 'over and above the amount adequate to compensate' the plaintiff, *Ranells, supra,* there is no need to award prejudgment interest on the punitive damages in order to compensate the plaintiff further for a delay in payment.

Similarly, the exemplary purposes of punitive damages are fully served without the addition of prejudgment interest onto those damages. Punitive damages 'by their very nature are unliquidated, and the amount to be awarded rests largely, in the first instance, with the jury.' *Gray v. Allision Division, General Motors Corp.* (1977), 52 Ohio App.2d 348 [370 N.E.2d 747]. In its deliberations, the jury determines the amount of punitive damages that is sufficient to punish the defendant and to deter others. The addition of prejudgment interest, over and above that amount, would necessarily alter the determination of the jury and yield a total award in excess of what the jury determined was appropriate. Such an excessive award would violate the principles underlying punitive damages; 'only such additional amount should be awarded as, taken together with the compensatory damages, will be sufficient for [the] purpose [of punishment].' 22 Am.Jr.2d, Damages at 264 at 359 (1965) (footnote omitted).

■ It remains for us to determine only, therefore, whether plaintiff is entitled to an award of prejudgment interest on the general verdict of $43,411.69. We have no trouble holding that this portion of the verdict is subject to the provisions contained in § 1343.03(C). This portion of the verdict represents damages on plaintiff's state law and federal law claims. We decline to hold that this amount constitutes a purely federal recovery. If plaintiff had been awarded an additional award under state law, we would have undoubtedly found the award to be duplicative and reduced the judgment anyway.

Moreover, we have no difficulty concluding that a verdict based on a claim of age discrimination falls within the scope of § 1343.03(C) as clearly constituting a suit based on "tortious conduct." *See* O.R.C. § 1343.03(C).

■ The question of whether a party fails to make a good faith effort to settle a case is a matter to be determined within the discretion of the trial court. *Huffman v. Hair Surgeon, Inc.,* 19 Ohio St.3d 83, 482 N.E.2d 1248 (1985); *Roberts v. Mutual Manufacturing & Supply Co.,* 16 Ohio App.3d 324, 475 N.E.2d 797 (Hamilton County Ct.Ap.1984). Before allowing prejudgment interest the Court must find:

> that the party required to pay the money failed to make a good faith effort to settle the case, and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case.

§ 1343.03(C).

Defendant directs us to *Ware v. Richey,* 14 Ohio App.3d 3, 9, 469 N.E.2d 899, 905 (Cuyahoga County Ct.Ap.1983) (citations omitted), where the court stated: "A lack of good faith (the equivalent of bad faith) requires more than bad judgment or negligence. Rather, it imports a dishonest purpose, conscious wrongdoing or breach of a known duty based on some ulterior motive or ill will in the nature of fraud."

Plaintiff directs us to what we consider to be the better standard, and the one which the Ohio Supreme Court is more likely to adopt when confronted squarely with the issue. In *Cox v. Fischer Fazio,* 13 Ohio App.3d 336, 469 N.E.2d 1055 (Cuyahoga County Ct.App.1984) the court stated: "The failure to make a good faith effort is

not equivalent to bad faith conduct. A party's inactivity can constitute a failure to make good faith efforts without demonstrating bad faith." *Cox*, 13 Ohio App.3d at 338, 469 N.E.2d at 1058.

In any event the Ohio Supreme Court has affirmed the broad discretion of the trial court to award prejudgment interest, and has stated that an appellee's perfunctory rejection or absurdly low response to an offer is a sufficient basis upon which the trial court could award prejudgment interest under § 1343.03(C). *Huffman, supra,* 19 Ohio St.3d at 87 n. 6, 482 N.E.2d 1055.

We hold that in the instant case there is ample basis upon which to award prejudgment interest. Plaintiff submitted affidavits and offered testimony at the hearing that plaintiff's reasonable settlement demands were consistently rebuffed by the defendants. At one point plaintiff offered to settle this case of $20,000, to which defendant responded with an offer of $1,000. As late as February 1985, plaintiff's counsel sent defendant a settlement letter outlining plaintiff's damages at $193,155 and demanding $90,000 for settlement, to which no response was ever received. We find ample evidence in the record that plaintiff pursued settlement in this case in good faith, but that there was a lack of good faith on the part of the defendant.

It is accordingly ordered, pursuant to O.R.C. Chapter 1343 that defendant pay prejudgment interest calculated at the rate of 10 percent per annum computed from the date plaintiff was unlawfully terminated until the date plaintiff is paid, on the amount of $43,411.69.

### ORDER

For reasons set forth in the attached memorandum, it is therefore ordered that:

Defendant's post-trial motions for judgment notwithstanding the verdict and new trial are denied, and defendant's motion for a remittitur is granted to the extent that plaintiff's punitive damages on the state law claim ($175,000) are reduced by the amount of liquidated damages awarded on the federal claim ($43,411.69).

Plaintiff's motion for front pay is denied. Plaintiff's motion for reinstatement into defendant's pension plan is granted, and defendant is ordered to make contributions to its pension plan sufficient to vest plaintiff's rights in the plan. Finally, plaintiff's motion for prejudgment interest is granted, but only to the extent that prejudgment interest is awarded on the general verdict of $43,411.69. The rate of prejudgment interest shall be calculated from the time of plaintiff's discharge until the payment of the award, and consist of the statutory rate of 10 percent per annum.

SO ORDERED.