This timely appeal comes for consideration upon the record in the trial court, the parties' briefs, and their oral arguments before this court. Plaintiff-Appellant/Cross-Appellee, Ohio Civil Rights Commission (hereinafter "Commission"), appeals the trial court's decision reducing the amount of damages awarded by the Commission to Tracie Lee Burchett (hereinafter "Burchett"). Defendant-Appellees/Cross-Appellants, East Liverpool Dodge Chrysler Plymouth Jeep (hereinafter "E.L. Dodge") and Basil Mangano (hereinafter "Mangano"), appeal the common pleas court's decision upholding the Commission's finding that they unlawfully discriminated against Burchett by illegally retaliating against her in violation of R.C. 4112.02(I). For the following reasons, we affirm the common pleas court's decision finding reliable, probative, and substantial evidence supported the Commission's finding that E.L. Dodge and Mangano unlawfully discriminated against Burchett. However, we conclude the court erred when it found the Commission's award of front pay was not supported by reliable, probative, and substantial evidence. Accordingly, we affirm the common pleas court's decision in part, reverse its decision in part, and reinstate the Commission's award of front pay to Burchett.
On March 3, 1998, Burchett filed a complaint with the Commission and the EEOC in which she alleged her employer, E.L. Dodge, sexually discriminated against her. In that complaint she asserts her immediate supervisor, Mangano, who was also the owner and president of E.L. Dodge, demoted her from finance manager to salesman because she was pregnant. The complaint was dismissed on July 28, 1998. On April 27, 1998, due to her pregnancy, Burchett notified E.L. Dodge that she was going to take maternity leave beginning on May 16, 1998, and that she would return to work on August 10, 1998. The August 10, 1998 date was tentative as Burchett planned on returning to work six weeks after the birth of her child when the doctor would give her permission to do so. Accordingly, her exact date of return would hinge on the date of her child's birth. At no time did Burchett ever inform E.L. Dodge when the exact date of her return would be. Although it appears that other employees knew Burchett was not pleased with her job, there was no question that she would be returning from maternity leave. In the beginning to middle of August, Burchett visited the offices of E.L. Dodge with her newborn, but did not inform anyone exactly when she would return. However, she did say she was planning on returning to work.
On August 31, 1998, the first working day after her newborn's six-week checkup, Burchett's physician gave her permission to return to work and Burchett returned to the offices of E.L. Dodge and started to clean up in the office she vacated, as Mangano moved some of his files into her office and used it as a second office after Burchett went on maternity leave. A fellow employee, who saw Burchett arrive at E.L. Dodge and start to clean that office, called Mangano. When Mangano arrived at E.L. Dodge he entered the office in a rage. He does not remember what he said, however, Burchett remembered him saying "he got his bill from his attorney", told her he did not need her there anymore, and ordered her to get out. Burchett complied. Soon after this incident, Mangano closed E.L. Dodge and sold its assets to a separate corporation owned by John Seretti (hereinafter "Seretti").
Burchett filed another complaint with the Commission on October 13, 1998, alleging discriminatory retaliation. Burchett moved to amend that complaint on July 1, 1999, and that motion was granted on October 26, 1999. The matter was heard by a hearing examiner on February 24, 2000. On May 4, 2000, the hearing officer made his findings of fact, conclusions of law and recommendations, and found Burchett was a victim of unlawful retaliation and awarded her both back pay and front pay. E.L. Dodge and Mangano filed their statement of objections with the Commission on June 7, 2000. In its final order dated October 26, 2000, the Commission adopted the hearing officer's report and incorporated that report in its final order.
On November 27, 2000, E.L. Dodge and Mangano filed their petition in the common pleas court. On April 18, 2001, the court entered judgment, affirming the Commission's finding that Burchett was retaliated against was supported by reliable, probative, and substantial evidence in the record, but that the award of front pay as damages was not. It is from this judgment that each party timely filed cross-appeals.
For purposes of analytical clarity, we will address the cross-assignment of error first. E.L. Dodge and Mangano assert as their sole cross-assignment of error as follows:
"The trial court prejudicially erred as a matter of law and abused its discretion in affirming the final order of the Commission which found East Liverpool Dodge and Basil Mangano violated Chapter 4112 of the Ohio Revised Code, and awarded the Complainant $40,630.00 plus interest, because the final order of the Commission was not supported by reliable, probative and substantial evidence."
E.L. Dodge and Mangano argue the common pleas court abused its discretion when it found the Commission's determination that Mangano unlawfully retaliated against Burchett was supported by reliable, probative, and substantial evidence in the record. R.C. 4112.06 provides for judicial review of the Commission's final orders in courts of common pleas. According to R.C. 4112.06(E), a common pleas court, when reviewing an appeal from a Commission decision, must affirm the Commission's finding of discrimination if the finding is supported by reliable, probative, and substantial evidence on the entire record. Ohio Civ. RightsComm. v. Case W. Res. Univ. (1996), 76 Ohio St.3d 168, 177,666 N.E.2d 1376. This is the same standard by which common pleas courts must evaluate appeals from other administrative orders. R.C. 119.12. "`Reliable' evidence is dependable or trustworthy; `probative' evidence tends to prove the issue in question and is relevant to the issue presented; and `substantial' evidence carries some weight or value." CaseW. Res. at 178. The court should defer to the Commission's determinations of credibility and only discredit evidence relied upon by the Commission if it finds a legally significant reason for doing so. University ofCincinnati v. Conrad (1980), 63 Ohio St.2d 108, 111-112, 17 O.O.3d 65, 407 N.E.2d 1265.
With regard to this Court's standard of review to be applied to OCRC appeals, "[a]n appellate court serves a limited role in reviewing orders of the OCRC; that role is `to determine whether the trial court abused its discretion in finding there was reliable, probative and substantial evidence to support the [OCRC's] order.'" Williams v. Ohio Civ. RightsComm. (Mar. 8, 2001), 7th Dist. No. 00 CA 37, quoting Case W. Res. Univ. at 177. The term "abuse of discretion" connotes more than an error of law or judgment; it implies the court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.
In this case, Burchett alleged, the Commission found, and the common pleas court upheld the finding that E.L. Dodge and Mangano unlawfully discriminated against Burchett in violation of R.C. 4112.02(I). That section provides it is an unlawful discriminatory practice
 "[f]or any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code." R.C. 4112.02(I).
In Ohio, federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000(e) et seq., Title 42, U.S. Code, is generally applicable to cases involving alleged violations of R.C. Chapter 4112.Little Forest Med. Ctr. v. Ohio Civ. Rights Comm. (1991),61 Ohio St.3d 607, 609-610, 575 N.E.2d 1164, certiorari denied (1992),503 U.S. 906, 112 S.Ct. 1263, 117 L.Ed.2d 491. Thus, when determining whether a party can recover on a claim of retaliatory discharge, a court must engage in the burden-shifting analysis first set out in McDonnellDouglas Corp. v. Green (1973), 411 U.S. 792, 93 S.Ct. 1817,36 L.Ed.2d 668. See Plumbers Steamfitters Joint Apprenticeship Commt. v. OhioCiv. Rights Comm. (1981), 66 Ohio St.2d 192, 20 O.O.3d 200, 421 N.E.2d 128.
Under the first part of the McDonnell Douglas analysis, a plaintiff must prove a prima facie case of discrimination. Texas Dept. of CommunityAffairs v. Burdine (1981), 450 U.S. 248, 252-253, 101 S.Ct. 1089,67 L.Ed.2d 207. If the plaintiff establishes this prima facie case, then the defendant must articulate some legitimate, nondiscriminatory reason for the employee's rejection. Id. If the defendant meets this burden, then the plaintiff must prove that the proffered reason was pretextual. Id. "It is important to note, however, that although the McDonnell Douglas
presumption shifts the burden of production to the defendant, `the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" St. Mary's Honor Center v. Hicks (1993),509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407, quoting Burdine at 253.
A prima facie case of retaliation is established by showing: 1) the plaintiff engaged in a protected activity; 2) the defendant knew plaintiff engaged in this activity; 3) the defendant took an employment action adverse to the plaintiff; and, 4) there was a causal connection between the protected activity and the adverse employment action. Baker v. TheBuschman Co. (1998), 127 Ohio App.3d 561, 567-568, 713 N.E.2d 487; Nguyenv. City of Cleveland (C.A.6, 2000), 229 F.3d 559, 563. A plaintiff's burden to prove a prima facie case is minimal. Nguyen at 566.
In this case, neither party disputes either that Burchett was engaged in a protected activity when she filed her complaint with the Commission or that E.L. Dodge and Mangano knew she was engaged in that protected activity. It is also clear that, despite the protestations of E.L. Dodge and Mangano to the contrary, Burchett suffered an adverse employment action on August 31, 1998. The real issue between the parties is whether Burchett can prove a causal connection between her protected activity and the August 31, 1998 incident. E.L. Dodge and Mangano argue there is no causal connection because the August 31, 1998 incident happened approximately five months after she filed her complaint.
A causal connection may be proven either directly or indirectly through knowledge coupled with a closeness in time. Id. Although temporal proximity alone is rarely sufficient to support a finding of causal connection, other direct or compelling evidence of a causal connection may be enough to support that finding. Id.
In this case, during Mangano's tirade after he discovered Burchett in the office, he told her he had received a bill from his attorney. This is direct evidence connecting Burchett's protected activity with the adverse employment action taken against her. E.L. Dodge and Mangano attempted to discredit this testimony by showing he received his attorney's bill after August 31, 1998, however, Mangano testified he could not remember what he said. E.L. Dodge and Mangano never directly refuted Burchett's testimony. Accordingly, it was not an abuse of discretion for the common pleas court to find the Commission's determination that Burchett had proven both a causal connection between the protected activity and the adverse employment action. Therefore, a prima facie case of discriminatory retaliation was established by reliable, probative, and substantial evidence.
Neither party disputes E.L. Dodge and Mangano articulated a legitimate, nondiscriminatory reason for the adverse employment action. Burchett told Mangano she planned to return to work on August 10, 1998, but did not inform anyone at E.L. Dodge of a change in her plan, and did not return to work on that date. Therefore, the only issue remaining is whether this reason was merely pretextual. A plaintiff may establish pretext by directly showing a discriminatory reason more likely motivated the employer or by indirectly showing the employer's explanation is not credible. Burdine at 256. However, the plaintiff must not only prove that the proffered pretext was false, but also that discrimination was the real reason. St. Mary's at 515. The factfinder's disbelief of the reasons put forward by the defendant may, together with the elements of a prima facie case, suffice to show intentional discrimination. Id. at 511.
In this case Burchett disputed the basis upon which E.L. Dodge and Mangano based their proffered reason for the adverse employment action. The hearing officer and the Commission resolved this dispute in Burchett's favor and disbelieved the given non-discriminatory reason. Combining the factfinder's disbelief in the reason given by E.L. Dodge and Mangano for the adverse employment action and the elements of Burchett's prima facie case for retaliation, it was not an abuse of discretion for the common pleas court to find the Commission's decision that Burchett had been illegally discriminated against was supported by reliable, probative and substantial evidence. The cross-assignment of error is meritless.
The Commission's sole assignment of error is as follows:
 "The court of common pleas abused its discretion when it set aside and reversed the Ohio Civil Rights Commission's award of `front pay' to Tracie Lee Burchett."
The Commission contends the court abused its discretion when it found the award of front pay was inappropriate because the record was "devoid of any significant evidence." The Commission argues reliable, probative, and significant evidence in the record supports an award of front pay damages, namely, that Burchett either had a future in the automotive sales industry or made an attempt to be re-employed in that industry.
Because E.L. Dodge and Mangano violated R.C. Chapter 4112 they are subject to damages. R.C. 4112.99; Elek v. Huntington Natl. Bank (1991),60 Ohio St.3d 135, 573 N.E.2d 1056. When a party is injured by a violation of R.C. Chapter 4112, they are entitled to "make whole" relief. Ohio Civ. Rights Comm. v. David Richard Ingram, D.C., Inc. (1994), 69 Ohio St.3d 89, 93, 630 N.E.2d 669. When determining what relief is proper, Ohio courts may look to federal law's Title VII standards when awarding damages for violations of R.C. Chapter 4112. Id.
A plaintiff is made whole by being returned to the position the plaintiff would have occupied had the discrimination not occurred. McNeilv. Economics Laboratory, Inc. (C.A.7, 1986), 800 F.2d 111, 118. Normally, this means the plaintiff is entitled to reinstatement. SeeErebia v. Chrysler plastic Products Corp. (1988), 863 F.2d 47. However, in this case, reinstatement is an impossibility since E.L. Dodge has ceased doing business. In a case like this, the plaintiff is entitled to front pay. Worrell v. Multipress, Inc. (1989), 45 Ohio St.3d 241,543 N.E.2d 1277. "Although courts have defined `front pay' in numerous ways, front pay is simply money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement."Pollard v. E.I. DuPont De NeMours Co. (2001), 532 U.S. 843, 846,121 S.Ct. 1946, 150 L.Ed.2d 62. As the Ohio Supreme Court explained:
"First, front pay is an equitable remedy designed to financially compensate employees where `reinstatement' of the employee would be impractical or inadequate. In such circumstances an award of front pay enables the court to make the injured party whole, although reinstatement is the preferred remedy. See Cassino v. Reichhold Chemicals, Inc. (C.A.9, 1987), 817 F.2d 1338, certiorari denied (1988), 484 U.S. 1047,108 S.Ct. 785, 98 L.Ed.2d 870; Maxfield v. Sinclair Internatl. (C.A.3, 1985), 766 F.2d 788, certiorari denied (1986), 474 U.S. 1057,106 S.Ct. 796, 88 L.Ed.2d 773; O'Donnell v. Georgia Osteopathic Hosp., Inc. (C.A.11, 1984), 748 F.2d 1543. Second, as an equitable remedy, it is left to the sound discretion of the trial court to determine whether front pay is appropriate under the circumstances of the case. If it is determined that front pay is an appropriate remedy, then the jury should determine the amount of damages. Hansard v. Pepsi-Cola Metro. Bottling Co. (C.A.5, 1989), 865 F.2d 1461, 1470. Third, it is apparent that front-pay damages are temporary in nature, as they are designed to assist the discharged employee during the transition to new employment of equal or similar status. Cassino v. Reichhold Chemicals, Inc., supra, at 1347; Bailey v.Container Corp. of America (S.D.Ohio 1986), 660 F. Supp. 1048, 1055."Worrell at 246-247.
Accordingly, "[w]here an employee has been wrongfully discharged as a result of a breach of an employment contract, front pay, or lost future wages, may be awarded as compensation between the date of discharge and reemployment in a position of equal or similar status." Id. at paragraph two of the syllabus.
Even though front pay is a substitute for reinstatement, Burchett has a duty to mitigate an award of front pay. Suggs v. Servicemaster Edn. FoodMgt. (C.A.6, 1996), 72 F.3d 1228, 1234. The trial court found an award of front pay inappropriate because it found no significant evidence in the record that Burchett mitigated her damages.
The Commission argues there is reliable, probative and substantial evidence supporting an award of front pay. The first item of evidence the Commission cites is Mangano's testimony that his employees were either employed by him at a different location or by Seretti. The hearing examiner found Burchett would have been employed by Seretti had she been employed at E.L. Dodge at the time of the sale of the dealership by Mangano to Seretti. However, even if this finding is true, it does not show Burchett made any efforts to mitigate her damages. Thus, it is not reliable, probative, and substantial evidence that demonstrates she attempted to mitigate her damages.
The Commission also argues two other pieces of evidence support a finding that Burchett attempted to mitigate her damages: her unemployment compensation log and her testimony at the hearing. In her unemployment compensation log, Burchett kept a list of employers where she applied for work, their location, the title of the person whom she contacted, how she contacted them, the date on which she contacted them, and the result of that attempt to gain employment. The log indicates she applied at thirteen different car dealerships in the six months between September 3, 1998, and March 3, 1999, including at Seretti's business on February 27, 1999. In her testimony at the hearing, Burchett stated she had tried to find work in other car dealerships and had been unsuccessful. Both the log and Burchett's testimony are evidence that she tried to mitigate her damages.
Although the credibility of this evidence was challenged by E.L. Dodge and Mangano at the hearing, the hearing officer decided these credibility issues in Burchett's favor. There is no legally significant reason the common pleas court discredited this evidence. Accordingly, the court abused its discretion when it found the Commission's award of front pay was not supported by reliable, probative, and substantial evidence. The Commission's assignment of error is meritorious.
In conclusion, E.L. Dodge and Mangano's cross-appeal is meritless because the court did not abuse its discretion when it found that the Commission's decision that Burchett was unlawfully discriminated against was supported by reliable, probative, and substantial evidence. The Commission's assignment of error is meritorious because there was reliable, probative, and substantial evidence that Burchett had attempted to mitigate her damages. The common pleas court's decision is affirmed in part and reversed in part and the Ohio Civil Rights Commission's award of front pay damages to Burchett is hereby reinstated.
Donofrio, J., and Waite, J., concur.