JOURNAL ENTRY AND OPINION
{¶ 1} Defendant appeals the trial court granting plaintiffs', Thomas and Donna Meehan's, motion for prejudgment interest. For the reasons that follow, we affirm the trial court's judgment.
 {¶ 2} This case arises from a motor vehicle accident on August 3, 2000. Thomas Meehan was injured when the car he was driving was struck by a vehicle driven by defendant, Joanne Johns. Thomas Meehan and his wife, Donna filed suit[1] against defendant on June 26, 2002.
 {¶ 3} In the case at bar, the parties agree that up until closing arguments at trial, plaintiffs' settlement demand to defendant's insurer, State Farm Insurance Company, was $100,000.00, the amount of defendant's automobile insurance policy limits.[2] Thomas Meehan's medical bills from the accident totaled $18,000. His lost wages amounted to $36,000.00.
 {¶ 4} State Farm's highest settlement offer was $10,000.00.[3] It had made an initial offer of $5,000 at the first pre-trial. Just before the trial, it increased the offer to $10,000. Tr. 57. The parties proceeded to trial; just before closing arguments, plaintiffs reduced their settlement demand to $75,000. Defendant did not make a counter-offer. On December 16, 2003, the jury returned a $55,000.00 verdict in plaintiff's favor.
 {¶ 5} Plaintiffs filed a motion for prejudgment interest. The trial court conducted a hearing on that motion. On August 6, 2004, the trial court granted plaintiff's motion. It is from that judgment defendant appeals and presents a single assignment of error:
"The trial court erred in granting plaintiff-appellee's motion for prejudgment interest, because (1) plaintiff's own physician could not state conclusively whether plaintiff's neck condition was caused by the subject incident; (2) there was no visible damage to either automobile immediately following the incident; and (3) the subject incident was an extremely low-impact tap of plaintiff's rear bumper by defendant's front bumper."
 {¶ 6} Defendant argues the trial court erred in granting plaintiffs' motion for prejudgment interest. We disagree.
 {¶ 7} On appeal, a trial court's decision to grant or deny a party's request for prejudgment interest is reviewed under an abuse of discretion standard, namely, whether the trial court acted unreasonably, arbitrarily, or unconscionably. Allgood v. Smith (April 20, 2000), Cuyahoga App. Nos. 76121 and 76122, 2000 Ohio App. LEXIS 1744, at *20, citing Huffman v. Hair Surgeon, Inc. (1985), 19 Ohio St.3d 83, 87,482 N.E.2d 1248. As long as there is some competent, credible evidence supporting the trial court's judgment, that judgment will not be disturbed on appeal. Id.
 {¶ 8} R.C. 1343.03(C) authorizes the award of prejudgment interest in civil cases alleging tortious conduct:[4]
"Interest on a judgment, decree, or order for the payment of money rendered in a civil action based on tortious conduct and not settled by agreement of the parties, shall be computed from the date the cause of action accrued to the date on which the money is paid, if, upon motion of any party to the action, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case."
 {¶ 9} In determining the question of prejudgment interest, Ohio courts follow Kalain v. Smith (1986), 25 Ohio St.3d 157, 159, 495 N.E.2d 572, in which the Ohio Supreme Court held:
"A party has not "failed to make a good faith effort to settle" under R.C. 1343.03(C) if he has (1) fully cooperated in discovery proceedings, (2) rationally evaluated his risks and potential liability, (3) not attempted to unnecessarily delay any of the proceedings, and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party."
 {¶ 10} All parties are expected to make an honest effort to settle a case. Id. However, when a party has "a good faith, objectively reasonable belief that he has no liability, he need not make a monetary settlement offer." Iammarino v. Maguire, Cuyahoga App. No. 80827, 2003-Ohio-2042, at ¶ 11.
 {¶ 11} At the hearing required by R.C. 1343.03(C), the moving party must present evidence that it made a reasonable settlement offer while the other party failed to make a good faith effort to settle the case.Kalain, supra. In considering whether the parties' efforts are reasonable, the trial court may take new evidence and review the evidence presented at trial, including its prior rulings and jury instructions. The trial court must consider all evidence "when considering such factors as the type of case, the injuries involved, applicable law, and the available defenses." Galmish v. Cicchini, 90 Ohio St.3d 22, 34,2000-Ohio-7, 734 N.E.2d 782.
 {¶ 12} As observed in Bailey v. Container Corp. of Am., (N.D. Ohio 1986), 660 F.Supp. 1048:
"* * * the Ohio Supreme Court has affirmed the broad discretion of the trial court to award prejudgment interest, and has stated that an appellee's perfunctory rejection or absurdly low response to an offer is a sufficient basis upon which the trial court could award prejudgment interest under § 1343.03(C)."
Id., at 1055, 1057. See also Cashin v. Cobett, Cuyahoga App. No. 84475, 2005-Ohio-102,[5] at ¶ 19 and ¶ 20.
 {¶ 13} In the case at bar, John Reigert, State Farm's claims representative, confirmed that State Farm had never disputed defendant's liability for the car accident with Thomas Meehan. Tr. 10-11. According to Reigert, State Farm disputed only the issue of proximate cause. His testimony is as follows on the issue of causation:
"Q: So to sum up, this case went to trial as 100 percent liability against State Farm's insured with no prior personal injury claims, and no prior workers' compensation claims, and no prior medical conditions whatsoever from his family practitioner with whom he had treated for years. Fair enough?
A: That's correct.
* * *
Q: And Dr. Gurley had authored a report in June of 2002 relating Tom's neck and arm conditions to this underlying automobile accident, hadn't he?
A: He had compromised that somewhat but in general that's correct.
* * *
Q: Okay. All right. Dr. Gurley's written opinion in the June 2002 report correlating clinical signs and symptoms appear to be directly and temporally related to the automobile accident.
Was that not in his written opinion in his June 2002 report?
A: I believe that in general it was but he did follow up saying that there was always a question of causal relationship.
Q: I have Dr. Gurley's report right in front of me. What page are you referring to?
A: This would be —
* * *
Q: Well, in fairness to both of us, why don't you just read the last paragraph slowly into the record at the bottom of page three.
A: Beginning with this summarizes?
Q: This summarizes, yes.
A: This summarizes Mr. Meehan's history and treatment as well as my opinion regarding his clinical signs and symptoms. There's always a question of direct causal relationship of the actual cervical pathology.
Unfortunately, given his age, it is difficult to discern to what extent the underlying disk herniation resulting from the motor vehicle accident, but what is clear is that his correlating clinical symptoms and— signs and symptoms appear to be directly and temporally related.
Q: And that was essentially the opinion that he testified to at the time. Do you know?
A: I was aware through Mr. Williams that is correct.
Q: Okay. Fair enough. In this case was there ever any examination of Mr. Meehan by the defense, a defense medical examination by any physician called to the case by the defendants?
A: No, there was not. (Emphasis added.)"
Tr. 12-13.
 {¶ 14} Reigert admitted that he filled out only one injury claim worksheet for the case in March 2003, three months before Dr. Gurley testified at trial. Despite Dr. Gurley's June 16, 2002 report finding a causal relationship between Meehan's injuries and the accident, Reigert estimated the settlement value of the case between $6,000.00 and $8,000.00.
 {¶ 15} Prior to trial, State Farm's settlement offer was $5,000.00 in response to plaintiffs' $100,000.00 settlement demand. On the day of the final pretrial, State Farm increased its offer to $10,000.00. Plaintiffs reduced their settlement demand to $75,000.00. State Farm did not counter-offer.
 {¶ 16} The adjuster acknowledged that State Farm was liable for whatever negligence occurred in the accident, but claimed the issue was "whether or not the injuries sustained or claimed by Mr. Meehan were proximately caused by this negligence." Tr. 28. The adjuster focused on that part of Dr. Gurley's opinion stating that Mr. Meehan's age made it "difficult to discern to what extent the underlying disk herniation resulting [sic] from the motor vehicle accident * * *." Tr. 15.
 {¶ 17} Reigert thought the extent to which Mr. Meehan's claimed injuries were caused by the accident was suspect. Tr. 34. He cited the 19-day lapse of time between Mr. Meehan consulting his doctor, and the 5 1/2 months that elapsed before he first reported an elbow problem. Tr. 29. Reigert used this time frame and the fact that there were nine doctor visits with no elbow complaint, as the basis for concluding that Mr. Meehan had suffered a minimal soft tissue injury. Tr. 19.
 {¶ 18} Reigert's own injury claim worksheet, however, acknowledges that Meehan in September of 2000, one month after the accident, had reported symptoms in his arm. In that worksheet, Reigert recorded the following entries:
"9/3/00 SW Hosp ER — 2 weeks of lean forward dizzy, 2 days of lt rt arm tingle * * *
* * *
2/8/01 Dr Gurley — referred to Dr Ravishankar for EMG nervestudy for neck lt elbow complaints
2/22/01 — nerve study — * * * lt ulnar nerve compressed
* * *
4/6/01 — Dr Scarcella — lt elbow ulnar release surgery
* * *
Outcomes/Consequences: still has neck, arm knee complaints
* * *"
 {¶ 19} Plaintiff's Exhibit 1. Emphasis added. Without more, to interpret the entry of September 3, 2000 as excluding the elbow is too narrow a reading of such a brief statement. That report also refers to a two-week complaint of dizziness when Meehan leaned forward: symptoms that could easily disguise, or intermingle with, arm and elbow nerve problems. In fact, he was later referred for both "nerve study for neck lt elbow complaints," according to Reigert's worksheet.[6] The adjuster acknowledged, moreover, that he was not aware that plaintiff had any prior complaints of injury to his neck or left arm. Tr. 11-12. Eight months after the accident, Meehan received elbow ulnar release surgery. In the interim, he had received cervical blocks in December. This treatment is not easily attributable solely to age for a man with no prior complaints. Nor do we find persuasive Meehan's failure to specify early that he had an elbow problem, especially when he had immediately complained of his arm tingling. Reigert's interpretation of the medical records is too narrow and his analysis too speculative to serve as a basis for such a low offer.
 {¶ 20} Even though Reigert had reservations about the extent to which Mr. Meehan's injuries were caused by the accident, State Farm never presented any expert medical evidence to rebut plaintiffs' claim of proximate cause. Indeed, it never even ordered an independent medical exam. Instead, defendant argued that evidence of minimal impact to the auto challenged plaintiffs' claim of proximate cause. At the hearing on pre-judgment interest, the only evidence on impact was that the other auto's driver testified there was a "light insignificant tap," but this account was contradicted by Meehan who testified the other driver admitted to him that "she hit him a good one." Tr. 62. Because her testimony was contradicted, it did not clearly rebut the expert testimony of Dr. Gurley about defendant's claimed injuries. Ultimately, State Farm's failure to provide its own expert to challenge the proximate cause established by plaintiff's expert undermined the credibility of the adjuster's suspicion of the claimed injuries as a justification for its $10,000.00 settlement offer.
 {¶ 21} Furthermore, the adjuster knew the stakes were higher than his offer indicated. The adjuster was aware that plaintiff's expert economist testified that plaintiff's future "lost income would be $120,000 to $190,000." Tr. 31. Again, defendant had no expert to rebut this testimony. Tr. 38.
 {¶ 22} In reviewing the facts and record in this case, we conclude that defendant did not make a good faith effort to settle with plaintiffs prior to the jury's verdict. There is substantial evidence that defendant failed to reasonably evaluate its risks and potential liability in this case, especially in light of its decision not to present any expert testimony on the issue of causation.
 {¶ 23} State Farm's $10,000.00 settlement offer was disproportionately low when compared to Thomas Meehan's $73,000.00 claim for compensatory damages (medical expenses and lost wages).
 {¶ 24} Accordingly, the trial court did not abuse its discretion in granting plaintiffs' motion for prejudgment interest.
Judgment affirmed.
It is ordered that appellees recover of appellant their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Dyke, P.J., and Calabrese, Jr., J., concur.
[1] Donna Meehan alleged loss of her husband's consortium.
[2] Plaintiffs changed attorneys after 14 months. Tr. 48.
[3] Defendant claims the offer was $15,000.00, because defendant paid $5,000.00 to plaintiffs' subrogated medical payment insurer. Defendant stated that this payment was "handled internally between State Farm and State Auto and neither [counsel] had any involvement in that." Tr. 33.
[4] Section (A) of the statute, on the other hand, applies to breach of contract claims. "Unlike R.C. 1343.03(C), which grants the trial court discretion in deciding whether to award prejudgment interest in tortious conduct cases, R.C. 1343.03(A) mandates a prejudgment interest award unless the aggrieved party has already been fully compensated." Evans v.Dayton Power Light Co., Adams App. No. 03CA763, 2004-Ohio-2183, at ¶ 71.
[5] Cause dismissed upon appellant's motion, Cashin v. Cobett,
2005-Ohio-1639.
[6] We note that it was not until after the neck condition was treated that the surgery occurred on his elbow. It is possible the treatment and diagnosis of the elbow was delayed until the neck was treated. It is difficult to understand the entire picture when this court has not been given the trial transcript. For that reason, some deference must be given to the trial judge, who heard all the evidence at trial.