Sophia SHORE, Plaintiff-Appellee,

v.

FEDERAL EXPRESS CORP.,
Defendant-Appellant.

No. 84–5761.

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 30, 1985.

Decided Dec. 3, 1985.

Louis F. Allen, Elizabeth A. McKanna, argued, Clifford P. Johnson, Federal Express Corp., Memphis, Tenn., for defendant-appellant.

Stephen L. Shields, Katherine Carlyle, argued, Memphis, Tenn., for plaintiff-appellee.

Before MARTIN and JONES, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.

BOYCE F. MARTIN, Jr., Circuit Judge.

Federal Express Corporation appeals a judgment against it in a sex discrimination suit under Title VII of the United States Code, 42 U.S.C. § 2000e *et seq.* The district court, 589 F.Supp. 662, awarded Sophia Shore $157,829 in damages, as well as attorneys' fees as authorized by 42 U.S.C. § 2000e–5(k). Counsel have stipulated to the award of attorneys' fees.

Sophia Shore worked for Federal Express from November, 1975 until February, 1980. She was hired as a part-time secretary, and was promoted several times during her employment with the company. In 1976, she held a full-time position as secretary to the Director of Personnel, and in 1978 she was promoted to Personnel Policies and Procedures Coordinator under the Vice President of Personnel, Harry Keenan. In this position, Shore assisted Keenan in developing a Management by Objectives Program. Shore was promoted to the newly-created position of MBO coordinator in February of 1979, and in June of the same year was promoted to MBO Analyst. She continued to report to Keenan in both of these positions.

In November of 1979 Keenan left Federal Express, recommending James Bailey, another Federal Express employee, as his successor. Shore and Bailey had begun an intimate relationship five years before Shore had started work at Federal Express. Before 1979, their jobs at the company had not been related in any way.

Before accepting the position, Bailey advised Federal Express' Chief Executive Officer, Frederick Smith, that he had had an intimate relationship with Shore, but that it had ended and presented no problems. Shore disputes the accuracy of Bailey's statement about the status of their relationship. In any case, after Bailey assumed his new position the relationship did severely disrupt day-to-day operations in the Federal Express office. On February 1, 1980, after an argument concerning office staffing, Bailey fired Shore.

Shore requested a meeting with C.E.O. Smith in order to resolve the situation. The district court found that there were three conflicting versions of what occurred at that meeting, which took place on February 5, 1980. Both Bailey and Shore agreed that Shore was not allowed to explain her side of the story. After Smith related to Shore the reasons Bailey held his position and explained that the employee grievance procedure did not cover Shore's situation, Bailey and Smith testified that Shore volunteered to leave. Shore testified that she was removed from her job. All parties agreed that Smith promised Shore a comparable position in the company.

For the next four and one-half months, Shore received full pay and benefits from Federal Express, but performed no job duties other than searching for comparable employment within the company. Shore applied for one position, but was refused because she did not possess the stated minimum educational requirements. The company offered Shore two positions. The district court found that the first, Hazardous Materials Specialist, was not comparable to the MBO analyst position based on the testimony of the company's own personnel expert. The second position, Quality Assurance Auditor, required extensive travel, and the court below also found it was not comparable to the MBO position. Shore's refusal to accept this job resulted in her termination effective June 13, 1980.

The court below found this case to be a "classic case of disparate treatment based on sex." *Shore v. Federal Express Corp.,* 589 F.Supp. 662, 667 (W.D.Tenn.1984). The court compared Shore's treatment to Bail-

ey's, and found that Shore had made out a prima facie case of sex discrimination under the precepts of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The burden then shifted to Federal Express to articulate a legitimate nondiscriminatory reason for Shore's discharge. *Texas Dep't. of Community Affairs v. Burdine,* 450 U.S. 248, 254–55, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). The court found that the defendant's proffered reason for Shore's dismissal was her failure to accept the Quality Assurance Auditor position. The burden then shifted back to the plaintiff to prove that defendant's reason for dismissal was pretextual under the *Burdine* analysis. The court below found that Shore met this burden by an "overwhelming preponderance" of the evidence, finding "Bailey's after-the-fact attempt to justify his removing plaintiff from her MBO position to be as uncredible as his testimony." *Shore,* 589 F.Supp. at 667.

■ Federal Express argues here that the district court's analysis blurred two discrete acts, Shore's transfer and her dismissal. Because of this incorrect legal analysis, they argue, the legitimate nondiscriminatory reason for Shore's initial transfer was ignored, and if considered would have produced another result. Apparently, Federal Express maintains that the legitimate nondiscriminatory reason for Shore's initial transfer was her "voluntary" resignation from her position. The district court found differently, concluding

> the meeting between Bailey and Smith did not result in Shore's voluntary, uncoerced resignation [because] ... [s]he had already been removed from her MBO position by the Vice President of Objectives and Audits and the result of the meeting with Smith was a confirmation and ratification of that action.

*Shore,* 589 F.Supp. at 667.

The district court thus considered defendant's proffered legitimate nondiscriminatory reason for Shore's initial transfer from the MBO department. The purpose of the allocation of burdens of proof in a Title VII case "is to sharpen the inquiry into the elusive *factual* question of intentional discrimination." *Burdine,* 450 U.S. at 255, 101 S.Ct. at 1094 (emphasis added). The district court, after hearing all the evidence in the case, concluded that Federal Express had intentionally discriminated against Shore because of her sex. *Shore,* 589 F.Supp. at 667. Such factual determinations by the trial court in a Title VII case are to be evaluated under the "clearly erroneous" standard. *Grubb v. Foote Memorial Hospital,* 759 F.2d 546, 547 (6th Cir. 1985).

While a more detailed and structured application of the burdens of proof in Title VII disparate treatment actions might have clarified the district court's analysis, the record is clear that Federal Express' reasons for Shore's transfer were considered by the district court. The court's analysis of Shore's final removal, which constitutes the basis for the finding of discrimination in this case, correctly allocates the burdens of proof. The record indicates that the plaintiff correctly bore the burden of proof imposed by *McDonnell Douglas* and *Burdine,* and the defendant's production of a legitimate nondiscriminatory reason for its actions correctly shifted the burden back to Shore to prove pretext. *Cf. Brooks v. Ashtabula County Welfare Dep't,* 717 F.2d 263, 267 (6th Cir.1983), *cert. denied,* 466 U.S. 907, 104 S.Ct. 1687, 80 L.Ed.2d 160. We thus reject the argument of Federal Express and affirm the district court's conclusion that intentional discrimination exists in this case.

■ Federal Express' second argument is based on the plaintiff's duty to mitigate damages under section 706(g) of Title VII, 42 U.S.C. § 2000e–5(g). Specifically, Federal Express argues that the two positions offered to Shore were "comparable" to her MBO position, and therefore should operate to cut off back pay liability. The guidelines for determining the scope of a Title VII plaintiff's duty to mitigate were established in *Ford Motor Co. v. EEOC,* 458 U.S. 219, 231–32, 102 S.Ct. 3057, 3065–66, 73 L.Ed.2d 721 (1982):

[A]lthough the unemployed or underemployed claimant need not go into another line of work, accept a demotion, or take a demeaning position, he forfeits his right to back pay if he refuses a job substantially equivalent to the one he was denied.

In *Rasimas v. Michigan Dep't of Mental Health,* 714 F.2d 614, 623–24 (6th Cir.1983), *cert. denied,* 466 U.S. 950, 104 S.Ct. 2151, 80 L.Ed.2d 537 (1984), this Court applied the *Ford Motor Co.* standard, holding "the substantial equivalent of the position from which the claimant was discriminatorily terminated must afford the claimant virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status." *Id.* at 624. *See also NLRB v. Westin Hotel,* 758 F.2d 1126, 1129–31 (6th Cir.1985).

The district court's factual findings that the two jobs offered Shore were not comparable to her previous position are amply supported by the record, and as factual determinations are subject to the "clearly erroneous" standard of Fed.R.Civ.P. 52(a). At a minimum, the drastic difference in job responsibilities between each of the jobs offered by Federal Express and the plaintiff's former position supports the district court's conclusion that the positions were not comparable. The credited testimony of Federal Express' own personnel expert, Stephen Priddy, further bolsters the district court's finding of noncomparability.

Once a prima facie case of discrimination and resulting damage has been established, the defendant bears the burden of demonstrating that the plaintiff's conduct was so unreasonable as to constitute a failure to mitigate damages. *Rasimas,* 714 F.2d at 625. We believe the district court to be correct in finding that Federal Express did not meet this burden under the facts of this case.

Federal Express argues finally that the damages awarded by the district court

place the plaintiff in a better position than she would have occupied absent the discrimination. The court awarded net back pay of $88,944,[1] and five years of front pay of $68,880. The parties stipulated to the back pay award and the attorneys' fees; Federal Express' dispute is therefore limited to the validity of the front pay award.

Front pay has been defined as "an affirmative order designed to compensate the plaintiff for economic losses that have not occurred as of the date of the court decree, but that may occur as the plaintiff works toward his or her rightful place." Note, *Front Pay—Prophylactic Relief under Title VII of the Civil Rights Act of 1964,* 29 Vand.L.Rev. 211, 212 (1976). The remedial provision of Title VII is section 706(g), which provides in pertinent part:

> If the court finds that the respondent has intentionally engaged in ... an unlawful employment practice .... the court may ... order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without backpay ... or any other equitable relief as the court deems appropriate.

42 U.S.C. § 2000e–5(g).

The back pay award is limited by the date judgment is entered in a case. Thus, without a front pay award or reinstatement, the plaintiff is uncompensated for the time between the date of judgment and the date the plaintiff attains the position he or she would have occupied but for the discrimination. Front pay is therefore simply compensation for the post-judgment effects of past discrimination.

One of the essential purposes of Title VII is "to make persons whole for injuries suffered on account of unlawful employment discrimination." *Albemarle Paper v. Moody,* 422 U.S. 405, 418–19, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975). Where the legal injury is economic,

---

**1.** This figure was computed as follows:

| | | | |
|---|---|---|---|
| Gross Back Pay | $90,093 | Fringe Benefits | $ 12,883 |
| Interest | 17,472 | Mitigation | (31,504) |
| | | Net Back Pay | $88,944 |

Content:

---

---

[t]he general rule is, that when a wrong has been done, and the law gives a remedy, the compensation shall be equal to the injury. The latter is the standard by which the former is to be measured. The injured party is to be placed, as near as may be, in the situation he would have occupied if the wrong had not been committed.

*Id.* at 418–19, 95 S.Ct. at 2372 (quoting *Wicker v. Hoppock*, 73 U.S. (6 Wall.) 94, 99, 18 L.Ed. 752 (1867)). The *Albemarle Paper* Court, in holding that back pay is presumptively due successful Title VII plaintiffs, emphasized congressional intent in fashioning relief under Title VII:

"The provisions of this subsection are intended to give the courts wide discretion in exercising their equitable powers to fashion the most complete relief possible. In dealing with the present section 706(g) the courts have stressed that the scope of relief under that section of the Act is intended to make the victims of unlawful discrimination whole, and that the attainment of this objective rests not only upon the elimination of the particular unlawful employment practice complained of, but also requires that persons aggrieved by the consequences and effects of the unlawful employment practice be, so far as possible, restored to a position where they would have been were it not for the unlawful discrimination."

*Id.* 422 U.S. at 421, 95 S.Ct. at 2373 (quoting 118 Cong.Rec. 7168 (1972) (Section by Section Analysis introduced by Senator Williams to accompany the conference Committee Report on the 1972 Act)). *See also Franks v. Bowman Transportation Co.*, 424 U.S. 747, 774, 96 S.Ct. 1251, 1269, 47 L.Ed.2d 444 (1976); *Patterson v. American Tobacco Co.*, 535 F.2d 257, 269 (4th Cir.1976), *cert. denied*, 429 U.S. 920, 97 S.Ct. 314, 50 L.Ed.2d 286 (1977).

Under this rationale, victorious Title VII plaintiffs are presumptively entitled to back pay until the date judgment is entered in the case. *Nord v. United States Steel Corp.*, 758 F.2d 1462, 1473 (11th Cir.1985);

*Patterson*, 535 F.2d at 269. The same rationale dictates that successful Title VII claimants are also presumptively entitled to reinstatement. *Nord*, 758 F.2d at 1473. Federal Express concedes that reinstatement is an inappropriate remedy in this case. Shore's resumption of the MBO Analyst position would displace the person who has held the position since April, 1980. Additionally, the hostility which unfortunately exists between the parties precludes the possibility of a satisfactory employment relationship. *See, e.g., Whittlesey v. Union Carbide*, 742 F.2d 724 (2d Cir.1984) (ADEA); *Fadhl v. City and County of San Francisco*, 741 F.2d 1163 (9th Cir. 1984); *EEOC v. Kallir, Philips, Ross, Inc.*, 420 F.Supp. 919, 926–27 (S.D.N.Y.1976), *aff'd*, 559 F.2d 1203 (2d Cir.1977), *cert. denied*, 434 U.S. 920, 98 S.Ct. 395, 54 L.Ed.2d 277 (1978).

Therefore, if the trial court determines that an award of back pay does not fully redress a Title VII plaintiff's injuries, and reinstatement is not possible, an award of front pay is sometimes appropriate in order to effectuate fully the "make whole" purposes of Title VII.

The front pay issue in Title VII litigation is one of first impression for this Circuit. In *Davis v. Combustion Engineering*, 742 F.2d 916, 922–23 (6th Cir. 1984), we held front pay to be an appropriate remedy under the Age Discrimination in Employment Act. We echo the *Davis* court's observation that front pay "does not lend itself to a *per se* rule.... [I]t must be governed by the sound discretion of the trial court and may not be appropriate in all cases." *Id.* Awards of front pay should be evaluated under the standards applied to all Title VII relief: whether the award will aid in ending illegal discrimination and rectifying the harm it causes. *See Thompson v. Sawyer*, 678 F.2d 257, 259 (D.C.Cir.1982).

The unique nature of the plaintiff's former position renders a calculation of a

front pay award in this case particularly difficult. While a district court has considerable experience in calculating future earnings, some basis must appear in the record for such an award. Some of the factors which district courts have employed to alleviate the speculative nature of future damage awards include an employee's duty to mitigate, "the availability of employment opportunities, the period within which one by reasonable efforts may be re-employed, the employee's work and life expectancy, the discount tables to determine the present value of future damages and other factors that are pertinent on prospective damage awards." *Koyen v. Consolidated Edison Co.*, 560 F.Supp. 1161, 1168–69 (S.D.N.Y.1983).

The record from the court below contains no indication of the basis for the front pay award. The cut-off date for the award is within the discretion of the district court, *Goss v. Exxon Office Systems, Inc.*, 747 F.2d 885 (3d Cir.1984), yet evidence must be submitted from which a reasonable projection can be made. Such an estimation must involve more than mere guesswork. The cost of obtaining a college degree, cited by the plaintiff as a basis for the front pay award, cannot be considered a post-judgment effect of defendant's discrimination. The front pay award is limited to the amount required to place the plaintiff in the position she would have occupied in the absence of the discrimination. However desirable a college education may be, we cannot impose this cost on the defendant in this case. We therefore remand this case to the district court for additional findings on the front pay issue.

We uphold the district court's finding of intentional discrimination on the part of Federal Express, as well as its conclusions as to the plaintiff's mitigation of damages. The case is remanded, however, for further findings on the issue of front pay, in light of the remedial goals of Title VII as applied to this plaintiff's situation.