**Franklin J. STAFFORD, Plaintiff,**

v.

**ELECTRONIC DATA SYSTEMS CORPORATION, Defendant.**

No. 90–CV–70107–DT.

United States District Court, E.D. Michigan, S.D.

Oct. 16, 1990.

James A. Burns, Birmingham, Mich., for plaintiff.

Martin T. Wymer and Bruce S. Friedman, Southfield, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER OF THE COURT ON ISSUES OF RE-INSTATEMENT AND FRONT PAY

ROSEN, District Judge.

Presently before this Court are the issues relating to future relief, i.e., reinstatement and front pay, which the Court reserved to itself for decision following the July 1990 jury trial in this wrongful discharge/breach of employment contract lawsuit.[1] The parties have briefed their respective positions on the reinstatement and front pay issues, and the Court heard oral argument on them on September 13, 1990. This Memorandum Opinion and Order reflects the Court's ruling on these future relief issues.

## I. BACKGROUND

During the course of trial, the Court ruled on a pre-trial request of Defendant Electronic Data Systems Corporation ("EDS") relating to Plaintiff's entitlement to future damages, and held that the jury would be instructed that if it found for the Plaintiff on the issue of liability, then it was to determine an award of "back pay" damages (i.e., lost wages and benefits from the date of termination through the date of trial). The Court ruled, however, that questions relating to future relief would not be submitted to the jury for decision. Rather, the Court held that it would determine the issues of whether Plaintiff would be awarded reinstatement and/or future damages ("front pay") after the jury returned its verdict on liability and back pay.

The jury returned its verdict on July 25, 1990. The jury found for the Plaintiff on the issue of liability and awarded him back pay in the amount of $78,055.36.[2]

On August 1, 1990, the Court entered an Order directing the parties to appear for a hearing on the remaining future relief issues on September 13, 1990, and further directed the parties to submit briefs on the issues to be decided at that hearing, i.e., the appropriateness and nature of future relief, if any, to be accorded to Plaintiff Franklin Stafford.

The parties complied with the Court's August 1 Order and submitted briefs addressing their respective positions regarding the issues of (1) whether reinstatement of Plaintiff to employment with EDS is an

---

1. The Court rendered its initial decision on this issue from the bench on July 24, 1990, and issued a written Opinion and Order dated July 30, 1990, captioned "Opinion and Order Regarding Future Relief." *See, Stafford v. Electronic Data Systems Corporation,* 741 F.Supp. 664 (E.D. Mich.1990). In that decision, the Court held that issues of reinstatement and front pay were within its province rather than the jury's, because reinstatement relief is clearly equitable in nature and front pay is simply a substitute remedy to be granted where reinstatement is impracticable. *Id.* at 666–667. *See also,* discussion of reinstatement versus front pay, *infra.*

2. Before the Court gave the jury its instructions, the parties stipulated that the amount of back pay damages in this case was $78,055.36 and

agreed that the jury should be instructed accordingly. The jury was, therefore, instructed:

> Plaintiff's expert testified that if you find that Mr. Stafford is entitled to damages, you should award him $78,055.36, which is the present value of his loss from the date of his termination to today.
>
> The parties have agreed that, if you find for Mr. Stafford, this is the amount you should award him, less mitigation. I, therefore, instruct you that if you should find for Mr. Stafford, you should award him this amount, less any amount that you believe could have reasonably been avoided if you find that Mr. Stafford failed to mitigate, in whole or in part, his damages.

appropriate remedy; (2) whether the Court should order a monetary award of future damages instead of reinstatement; (3) what the amount of an award of such future damages should be; and (4) what limitations, if any, should be placed on any such future damages award. The Court reviewed the Plaintiff's and the Defendant's briefs, and also heard the oral arguments of the parties on these issues at the September 13, 1990 hearing.

## II. ANALYSIS

### A. APPROPRIATENESS OF REINSTATEMENT OF PLAINTIFF TO EMPLOYMENT WITH DEFENDANT EDS.

The parties disagree as to whether reinstatement is an appropriate remedy in this case, although it appears that since trial, the parties have now effectively "switched places" and have reversed their respective original positions on this issue.

### 1. *Defendant's Original Position*

Defendant EDS originally argued—in both of the briefs it submitted on the future relief issues and in its initial presentation of its position at the September 13, 1990 hearing—that the Court should order reinstatement (in lieu of a monetary award of front pay) because it is a remedy that is "clearly feasible" in this case. EDS based this contention on the facts that (1) reinstatement "is the remedy requested by Plaintiff himself in his Complaint" and (2) EDS has stipulated that it is willing to reinstate Stafford to a "substantially equivalent job" to the one that he held at the time of his discharge.[3]

EDS argued that it is "only where antagonism and hostility between the parties is so intense as to prevent the resumption of an employer-employee relationship"— which it contends is not the case in this action—"that reinstatement is precluded." [Defendant's Post–Trial Brief, pp. 3–4.]

Defendant further argued at the September 13, 1990 hearing that it could reinstate Plaintiff to a "comparable" position (to the one from which he had been discharged) in a different division, in a different EDS office, and in a different supervision line, and that by such a placement in a "totally new environment", it could alleviate any fear Plaintiff may have of encountering antagonism or hostility on the part of other EDS personnel. Thus, EDS argued for a ruling that reinstatement is the appropriate future relief that should be awarded to Plaintiff.

### 2. *Plaintiff's Original Position*

At the time of filing his Complaint, Plaintiff initially requested reinstatement to employment with EDS. [See Partial Transcript of Trial Proceedings on July 18, 1990, Partial Direct Examination of Frank Stafford, p. 54.] However, at trial, Plaintiff had changed his position and argued that reinstatement would not be appropriate in this case. *Id.* Although Plaintiff conceded that there were not any "open hostilities" between himself and former EDS co-workers/supervisors, any honest and trusting employer-employee relationship he may have had with EDS and its managerial personnel during the course of his employment has been irreparably severed as a result of this litigation. [See pp. 6–10 of Plaintiff's Post–Trial Brief.] This contention is supported by Plaintiff's trial testimony. [See 7/18/90 Partial Trial Transcript, pp. 56–57.] Thus, Plaintiff originally urged the Court to rule that reinstatement is not a feasible remedy in this case.

### 3. *The Parties' Reversal of Their Positions on the Reinstatement Issue*

After hearing the Court's dialogue with Plaintiff's counsel, (and apparently anticipating the Court's ruling on the reinstatement issue), and after conferring with his

---

**3.** See Defendant's Post–Trial Brief, p. 2 and Affidavit of Martin T. Wymer, both of which are dated August 20, 1990. See also, p. 5 of Defendant's previous July 20, 1990 Brief on the Issue of Front Pay, where Defendant stated, "EDS stipulates that should a judgment be entered in favor of Plaintiff it would (at the conclusion of the legal proceedings) reinstate him to a job fully comparable to the one from which he was discharged."

client, counsel for EDS told the Court that Defendant withdrew its previously stated opposition to a determination that reinstatement is inappropriate. EDS did not, however, affirmatively withdraw its earlier stipulation of its willingness to offer Plaintiff reinstatement to a "comparable position" in a "new environment".

Plaintiff, on the other hand, completely reversed his position on the reinstatement issue. After hearing the Court's dialogue with counsel on the future relief issues at the September 13, 1990 hearing, although he had previously voiced his opposition to reinstatement—both at trial and at the beginning of the September 13 hearing— Plaintiff informed the Court that he now wanted to be reinstated to employment with EDS.

Because it appeared to the Court from the parties' change of positions on reinstatement that they might be able to resolve the future relief issues among themselves, the Court withheld rendering an opinion on the matter on September 13, 1990, directed the parties on September 13th to try to resolve their differences, and requested that they advise the Court by September 24, 1990 of the status of their negotiations. The Court further informed the parties that if they were unable to reach an extra-judicial resolution of the future relief matters, the Court would then decide the issues concerning future relief.

Counsel for the parties contacted the Court on September 24th, and informed the Court that the parties had reached an impasse and were not able to work out a resolution of the matter on their own. Therefore, in accordance with the Court's September 13, 1990 bench directive, this Opinion and Order sets forth the Court's ruling on Plaintiff's entitlement to future relief.

### 4. *Discussion*

■ Reinstatement is among the equitable remedies that a trial court, in its discretion, may order as relief in a wrongful discharge/breach of contract action. The Michigan Court of Appeals at least implicitly sanctioned reinstatement as one of the remedies available to a trial court in *Toussaint*[4] breach of contract actions. *See, Ritchie v. Michigan Consolidated Gas Co.*, 163 Mich.App. 358, 413 N.W.2d 796 (1987).

In *Ritchie*, the Court of Appeals was called upon to review the trial court's refusal to grant relief from the operation of the monetary judgment entered pursuant to the jury's verdict (which included an award of front pay as well as an award of back pay) in a *Toussaint* breach of employment contract action where the defendant had agreed to reinstate the plaintiff to employment.

In denying the defendant's motion for judgment notwithstanding the verdict, the trial court, noting that no Michigan Appeals court had, to that date, ruled on the propriety of front pay damages in a *Toussaint* case, explained:

... The award of front pay is an issue governed by the sound discretion of the trial court. *Davis v. Combustion Engineering*, 742 F.2d 916, 923 (6th Cir.1984). This Court finds that front pay is permissible in this case. Plaintiff was dismissed from her job after accusations of wrongdoing. Although the jury in this case found her actions did not constitute wrongdoing, it is likely the accusations will make it more difficult for her to obtain employment. In addition, given Plaintiff's education it is unlikely that she will be able to find employment at near the same level as her previous employment.

413 N.W.2d at 803.

Finding no abuse of discretion on the part of the trial court on the future damages question, the Court of Appeals affirmed the trial court's ruling on this issue. *Id.* at 804.[5]

---

**4.** *Toussaint v. Blue Cross and Blue Shield of Michigan*, 408 Mich. 579, 292 N.W.2d 880 (1980).

**5.** The Court of Appeals did, however, remand the case for the limited purpose of findings of fact on the separate issue of the trial court's denial of the defendant's request for remittitur.

In deciding to affirm the trial court's ruling, the appellate court in *Ritchie* relied upon the future damages ruling of the court in *Riethmiller v. Blue Cross and Blue Shield of Michigan*, 151 Mich.App. 188, 390 N.W.2d 227 (1986), which was a state law age discrimination action. The *Ritchie* court explained that the *Riethmiller* court adopted federal precedent interpreting the Age Discrimination in Employment Act ("ADEA") and held in that case that

> in deciding whether to award front pay damages, a court should look to (1) *whether reinstatement would be a feasible remedy;* (2) what the employee's prospects are for other employment, and (3) how many years remain before the employee would be faced with mandatory retirement.

*Id.*, 413 N.W.2d at 803, *quoting, Riethmiller, supra,* 151 Mich.App. at 200–201, 390 N.W.2d 227. [Emphasis added.]

Finding *Riethmiller* applicable to *Toussaint* cases, the *Ritchie* court—like the *Riethmiller* court—emphasized, however, that a determination of whether front pay should be awarded by application of the above-quoted factors "is within the trial court's discretion." 413 N.W.2d at 803.

Given the facts that (1) *Ritchie* was a *Toussaint* breach of contract case, (2) the *Ritchie* court expressly applied the *Riethmiller* rationale—including the requirement that the court initially determine whether reinstatement is feasible—in fashioning future relief, and (3) the *Ritchie* court expressly held that the determination of future relief is a matter left to the sound discretion of the trial court, this Court reads *Ritchie* as sanctioning reinstatement as one of the remedies available to it in this *Toussaint* breach of contract action.

Furthermore, Plaintiff's counsel agreed at the September 13, 1990 hearing on this matter that it is within the Court's discretion to order reinstatement in this action. [See 9/13/90 Hearing Transcript, p. 21.]

Beyond the breach of contract context, reinstatement is widely recognized as a potential remedy that a trial court may order. *Davis v. Combustion Engineering, Inc.,*

742 F.2d 916, 922 n. 5 (6th Cir.1984) ("[T]he question of reinstatement should be reserved for decision by the Court"); *Goldstein v. Manhattan Industries, Inc.,* 758 F.2d 1435, 1448 (11th Cir.1985), *reh'g denied,* 765 F.2d 154 (11th Cir.1985), *cert. denied,* 474 U.S. 1005, 106 S.Ct. 525, 88 L.Ed.2d 457 (1985); *Loeb v. Textron, Inc.,* 600 F.2d 1003, 1023 (1st Cir.1979) ("[A]ll the inherent equitable powers of the District Court are available for the proper and complete exercise of that jurisdiction"). In fact, as Defendant points out, both Michigan and federal courts have noted that reinstatement is the "preferred remedy", and, thus, should be ordered whenever appropriate. *See e.g., Riethmiller v. Blue Cross and Blue Shield of Michigan, supra,* 390 N.W.2d at 233; *E.E.O.C. v. Prudential Federal Savings & Loan Ass'n,* 741 F.2d 1225 (10th Cir.1984), *vacated on other grounds,* 469 U.S. 1154, 105 S.Ct. 896, 83 L.Ed.2d 913 (1985). Reinstatement is the "preferred remedy" as to future relief because it involves the least amount of uncertainty—the plaintiff can be most effectively "made whole" through an award of back pay coupled with the reestablishment of the prior employment relationship. *Whittlesey v. Union Carbide Corp.,* 742 F.2d 724, 728 (2d Cir.1984).

However, where reinstatement is "impracticable or impossible", or, as some courts say, "not feasible", it should not be ordered. *Riethmiller v. Blue Cross and Blue Shield of Michigan, supra,* 390 N.W.2d at 233. Defendant's contention that it is *"only* where antagonism and hostility between the parties is so intense" and evidenced by "pervasiveness of acrimony" between them during the course of employment that reinstatement is precluded is not supported by the law.

Contrary to Defendant's assertions, courts have determined that reinstatement is not practicable—and, thus, not a viable remedy—in cases where, as here, even though there is no evidence of open hostilities between the defendant-employer and the plaintiff-employee while the employee was employed by the defendant, there is evidence that the employer-employee rela-

tionship has been irreparably damaged as a result of the post-discharge litigation. *See e.g., Whittlesey v. Union Carbide Corp., supra. See also, Hoffman v. Nissan Motor Corp.,* 511 F.Supp. 352 (D.N.H.1981).

The *Hoffman* case involved a two-week jury trial during which Nissan managers made some candid and uncomplimentary comments about the plaintiff's job performance. The jury returned a verdict against Nissan Corporation and awarded $79,624.87 in back pay. After the jury returned its verdict, the court refused to order the plaintiff reinstated to employment with Nissan, explaining that in light of the uncomplimentary comments of its managers concerning the plaintiff during the trial, "to order the plaintiff reinstated would be a harbinger of disaster and a catalyst to more litigation." 511 F.Supp. at 355.

In this case, Plaintiff testified at trial that any "trusting" employer-employee relationship that he may have had with EDS has been irreparably severed as a result of his lawsuit. Plaintiff based this assertion on his reaction to the pre-trial deposition testimony of several EDS supervisors, many of whom also testified at trial. [See 7/18/90 Partial Trial Transcript, p. 56.] Although Defendant states that it is willing to reinstate Plaintiff to a "substantially similar" position at a different EDS facility from that at which Plaintiff previously was employed, and that Plaintiff would be working for different supervisors than those persons involved in the decision to discharge him in 1987, the Court is not persuaded that such an approach would be practicable in Plaintiff's case.

Plaintiff's trial testimony weighs against reinstatement in this case. Plaintiff testified at trial that if he were to be reinstated—even in a different EDS office—

"I'd be constantly kind of looking over my shoulder. In any kind of work situation, you're kind of always, you know, maybe making decisions that will put you out there on the edge, and I think I'd be afraid to do anything wrong, and I don't [think] I could work under those kind of situations."

[7/18/90 Partial Trial Transcript, p. 56.]

The Court does not believe it could order Plaintiff back to work for EDS even at a different EDS facility, and expect him to have any realistic chance of future success. Such a placement would leave both parties "walking on eggshells" *ad infinitum*— Plaintiff worrying about how new supervisors would react to having someone working for them who has already sued the company because of prior supervisors' conduct, and EDS having to be concerned with the potential of being charged with retaliating against Plaintiff as a result of his having previously sued the company every time Plaintiff's supervisors criticized his work. Reinstatement of Plaintiff to employment at EDS under these circumstances—as the court in *Hoffman* found in that case—"would be a harbinger of disaster and a catalyst to more litigation."

For all of these reasons, the Court finds that reinstatement is not a viable, practicable remedy in this case, and, therefore, it will not order reinstatement of Plaintiff to employment at EDS.

B.  APPROPRIATENESS OF "FRONT PAY" IN LIEU OF REINSTATE-MENT AS A REMEDY IN THIS CASE

1.  *Plaintiff's Request for Front Pay*

Plaintiff Stafford requests that the Court award him "front pay", in lieu of reinstatement, in the amount of $670,-321.64.[6] This is the amount that Plaintiff's

---

**6.** In addition to the $78,055.36 awarded by the jury for back pay and the $670,321.64 that he seeks in "front pay", Plaintiff also asks the Court to award him an additional $39,645.12 to cover his ⅓ contingency attorney fee, but as Plaintiff concedes, there is no legal support for such a request.

Plaintiff further requests that the Court order Defendant to pay Plaintiff's expert witness fees

of $4,432.50. However, the United States Supreme Court has expressly held that trial courts have no authority to order payment of expert witness fees (other than the statutorily provided $30 fee applicable to all witnesses for testifying at trial). *See, Crawford Fitting Company v. J.T. Gibbons, Inc.,* 482 U.S. 437, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987).

economic expert testified at trial was the present value of the difference between (a) his projection of Plaintiff's future earnings and benefits (computed to include prospective annual increases in his earnings and benefits) had he remained employed at EDS until retirement at age 65 and (b) the amount that the expert projected that Plaintiff would earn in his current independent contractor/broadcast technician position through age 65, less the $78,055.36 awarded by the jury for lost wages and benefits from the date of Plaintiff's termination through the date of trial. *See* Plaintiff's Trial Exhibit 22, a copy of which is attached to Plaintiff's Brief Requesting an Award of Front Pay as Exhibit A. Plaintiff asks that the Court order Defendant to pay him the $670,321.64 immediately in a "lump sum" and further requests an additional "lump sum" payment of $40,880.00 for the value of 1,120 shares of EDS stock to which he would have been entitled under EDS' stock option plan had he remained in EDS' employ until all of his stock benefits "vested" under the plan.[7]

Thus, the total amount of the "lump sum" payment of future damages sought by Plaintiff is $711,201.64.

## 2. *Defendant's Request for a Limitation on Front Pay Damages*

Defendant EDS did not itself present any evidence of damages at trial or in connection with the post-trial hearing on future relief. Nonetheless, EDS contends that the Court should not award Plaintiff front pay until age 65. EDS argues that, just as Plaintiff had a legal duty to mitigate his back pay losses, he has a continuing duty to mitigate front pay losses. Therefore, Defendant asks the Court to limit any

award of future damages to what would be reasonably necessary to provide Plaintiff with a "bridge" to new, comparable employment, which EDS contends should be for a period of six months.

## 3. *Discussion*

■ From the record of this case, the Court takes note of the following facts established at trial.

Plaintiff was 39 years old at the time of his termination. He has a college degree and 19½ years of experience in the computer data processing industry. He had been employed by EDS for 3½ years, and by EDS' predecessor, General Motors, for nearly 14 years. At the time of his discharge he was earning $34,080 per year and receiving benefits valued at $5,966, in his computer/data processing position. Approximately six months to a year after his discharge, Plaintiff obtained another job as an independent broadcast technician for General Motors and as of the date of trial was earning $10.50 per hour, which amounts to $21,840 per year. At trial, Plaintiff testified that he wanted to stay in the broadcast industry rather than returning to the computer/information processing industry.

Michigan courts, like the federal courts, have found the issue of future damages or "front pay" in both employment discrimination cases and in *Toussaint* breach of employment contract cases to be a "very close and somewhat troubling issue". *See, Riethmiller v. Blue Cross and Blue Shield of Michigan, supra,* 390 N.W.2d at 232–234; *Ritchie v. Michigan Consolidated Gas Co., supra,* 413 N.W.2d at 802–804.

Noting the lack of Michigan precedent on this issue, in both *Riethmiller, su-*

---

Therefore, the Court will not order Defendant to pay Plaintiff the additional $39,645.12 he requests for attorney's fees or the additional $4,432.50 he requests for expert witness fees.

**7.** The 1,120 shares represent unvested shares of stock that Plaintiff was entitled to purchase under a special employee incentive stock grant at 10 cents per share while he was employed by EDS. The shares would have "vested" in increments of ten percent per year over a ten year period had Plaintiff remained in EDS' employ. Plaintiff's expert computed the total "value" of

the stock as of July 16, 1990 based on the $36.50 per share market price of EDS stock on that date, and calculated that that "value" was $40,880.00. During trial, prior to instructing the jury, the Court ruled that the relief requested with respect to the stock was "equitable in nature", *Riethmiller v. Blue Cross & Blue Shield, supra, later proceeding,* 824 F.2d 510 (6th Cir. 1987), and that it was, therefore, a matter "within [the Court's] equitable province" for it to decide, and not a matter to be submitted to the jury. [See 7/25/90 Partial Trial Transcript, p. 4.]

pra—which was an age discrimination in employment case predicated on violation of the Michigan Elliott–Larsen Act—and *Ritchie, supra*—which, like this case, was a *Toussaint* breach of employment contract case—the Michigan Court of Appeals adopted federal precedent involving the availability of front pay in cases predicated on violation of the federal Age Discrimination in Employment Act (ADEA) and Title VII of the Civil Rights Act of 1964, and from those federal cases, extrapolated standards to assist trial courts in deciding whether front pay should be awarded in state law discrimination and breach of employment contract actions. *See, Riethmiller, supra*, 390 N.W.2d at 232; *Ritchie, supra*, 413 N.W.2d at 803.

Observing that federal courts, including the Sixth Circuit,[8] have stated that the issue of front pay does not lend itself to a *per se* rule, the *Riethmiller* Court held that future damages should be available as a remedy "where appropriate" and that "the trial court should have discretion in deciding, based on the circumstances of each case, whether to award future damages." 390 N.W.2d at 233.[9] As the Michigan Court of Appeals observed in that case, "[E]ach case will present its own set of unique problems given the age of the plaintiff and other circumstances." *Id.*[10]

The *Riethmiller* court then went on to enumerate three factors—which, as explained above, the *Ritchie* court expressly

held applied to future damages claims in *Toussaint* actions—to aid trial courts in exercising their discretion in determining whether to award future damages:

> ... [I]n deciding whether to award front pay damages, a court should look to (1) whether reinstatement would be a feasible remedy; (2) what the employee's prospects are for other employment, and (3) how many years remain before the employee would be faced with mandatory retirement. However, a determination of whether front pay would be awarded is in the trial court's discretion.

*Riethmiller v. Blue Cross and Blue Shield, supra*, 390 N.W.2d at 233. *See also, Ritchie v. Michigan Consolidated Gas Co., supra*, 413 N.W.2d at 803.

The Court's decision regarding a front pay award in this case will, accordingly, be guided by the *Riethmiller/Ritchie* principles, as well as those of the federal courts which guided the Michigan Court of Appeals in those two cases.[11]

As explained in Section II(A) of this Memorandum Opinion and Order, the Court has already determined that reinstatement is not a viable remedy in this case. The Court will, therefore, discuss in this section the remaining *Riethmiller/Ritchie* principles set forth above.

### a. *Number of Years Stafford Has Until Retirement*

Stafford is now 42 years old. Assuming a retirement age of 65, it can be presumed

---

8. *See Davis v. Combustion Engineering, Inc., supra. See also, Shore v. Federal Express Corp.*, 777 F.2d 1155, 1159 (6th Cir.1985).

9. The Court further notes that Plaintiff's counsel conceded at the September 13, 1990 hearing on this matter that determination of the issue of front pay is a matter within the sound discretion of the trial court. [See 9/13/90 hearing transcript, pp. 18–19.]

10. The Michigan court's position on front pay mirrors that of the federal courts. *See e.g., Davis v. Combustion Engineering, Inc., supra*, 742 F.2d at 922:

   > [W]e hold that front pay is a remedy available to the trial court for use, in its discretion, in fashioning relief. We emphasize, however, that an award of front pay must be governed by the sound discretion of the trial court and

may not be appropriate in all cases. For example, the award of front pay to a discriminatorily discharged 41 year old employee until such time as he qualifies for a pension might be unwarranted.

   *See also, Shore v. Federal Express Corp., supra*, 777 F.2d at 1159 ("[An award of front pay] must be governed by the sound discretion of the trial court and may not be appropriate in all cases.")

11. Federal courts have, in fact, had much more experience handling front pay awards than Michigan courts. The *only* Michigan cases squarely addressing this issue are *Riethmiller, supra*, and *Ritchie, supra*, and neither of those cases discuss application of the factors in any great detail. Thus, it is especially appropriate for this Court—just as the Michigan Court of Appeals did in *Riethmiller* and *Ritchie*—to look to federal cases for guidance in this case.

that Plaintiff has 23 years remaining before retiring.

The number of years remaining that a plaintiff has before retirement is an important factor in considering whether front pay should be awarded and, if so, what the amount of the award should be. This factor bears consideration because of the inherently speculative nature of front pay awards covering a long period of time.[12]

As the court in *Rengers v. WCLR Radio Station*, 661 F.Supp. 649 (N.D.Ill.1986), explained:

> If the court awards front pay for the remainder of plaintiff's working life, it must presume the plaintiff would have remained in defendant's employ all during that time. The longer the front pay period, the more speculative the front pay award.

*Id.* at 651.

Similarly, the court in *Buckley v. Reynolds Metals Co.*, 690 F.Supp. 211 (S.D.N.Y. 1988) explained:

> Front pay awards have been considered unduly speculative in situations where the discharged employee is [only] forty years old, and where an award may encompass ten years or more during which the employee, had he not been unlawfully discharged but continued in his employment, might or might not get raises, reductions, fired or incapacitated. Thus, in *Bonura v. Chase Manhattan Bank, N.A.*, 629 F.Supp. [353] at 362 n. 3. [(S.D.N.Y.1986)], front pay was denied where the plaintiffs sought awards covering eleven and sixteen years, respectively, or prospective employment.

*Id.* at 216. *See also, Davis v. Combustion Engineering, Inc., supra*, in which the Sixth Circuit upheld an award of front pay to a 59 year old plaintiff but noted that front pay for a 41 year old plaintiff until retirement age might be unwarranted. Other courts seem to agree that plaintiffs in their forties are too young for lifetime front pay awards. *See e.g., Bailey v. Container Corporation of America*, 660 F.Supp. 1048 (S.D.Ohio 1986); *Foit v. Suburban Bancorp*, 549 F.Supp. 264, 267 (D.Md.1982); *Monroe v. Penn–Dixie Cement Corp.*, 335 F.Supp. 231, 235 (N.D.Ga. 1971).

b. *Plaintiff's Future Employment Prospects—Ability to Mitigate Damages in the Future*

Clearly, in delineating one of the factors that the Court should consider as being "what the employee's prospects are for other employment" the *Riethmiller* and *Ritchie* courts were concerned with the employee's ability to find comparable suitable employment and to mitigate his or her future losses. In fact, it was precisely because the court in *Ritchie* determined that the plaintiff—who had 18 years of seniority with Blue Cross at the time of her discharge but had relatively little education—would be completely unable to mitigate her future losses by obtaining comparable employment that the Court of Appeals found that the trial court appropriately exercised its discretion in awarding the plaintiff front pay until retirement age:

> In some cases of wrongful discharge, as in the instant case, a plaintiff will have difficulty finding employment of any type for some time after the discharge. When appropriate then, future damages in the way of front pay is permissible.

413 N.W.2d at 803.

Consideration of the plaintiff's ability to mitigate his/her losses in the future in order to alleviate the inherently speculative nature of prospective damage awards is echoed in front pay decisions of the federal courts. *See e.g., Shore v. Federal Express Corp., supra:*

> Some of the factors which district courts have employed to alleviate the specula-

---

**12.** The Court notes, as Plaintiff here points out, that the court in *Riethmiller, supra*, held that the mere fact that future damages may be speculative should not, in and of itself, preclude a trial court from awarding such damages. However, nothing in that case or any other case suggests that the speculative nature of front pay damages should be completely disregarded by the court in fashioning future relief. Indeed, as the *Riethmiller* court noted, "in determining the availability and amount of future damages *each case will present its own set of unique problems given the age of the plaintiff and other circumstances.*" 390 N.W.2d at 233.

tive nature of future damage awards include *an employee's duty to mitigate, the availability of employment opportunities, the period within which one by reasonable efforts may be re-employed,* the employee's work and life expectancy, the discount tables to determine the present value of future damages and other factors that are pertinent on prospective damage awards.

777 F.2d at 1160. [Emphasis added.] *See also, Dominic v. Consolidated Edison Company of New York,* 822 F.2d 1249, 1258 (2d Cir.1987), *reh. den.,* 822 F.2d 1249 at 1260 (2d Cir.1987) ("In calculating the size of a front-pay award the court must estimate the plaintiff's ability to mitigate damages in the future. Such a determination is committed to that court's discretion.")

Several courts have held that because of the plaintiff's continued duty to mitigate, front pay awards should only be temporary in nature, compensating the plaintiff only until such time that he could reasonably be expected to attain an employment status comparable to that from which he was discharged. *See, e.g., Bailey v. Container Corporation of America, supra,* 660 F.Supp. 1048, *citing, Loeb v. Textron, Inc.,* 600 F.2d 1003, 1023 (1st Cir.1979) ("[P]ayments in lieu of reinstatement ... have been designed to assist the plaintiff during the period in which he can be expected to find other employment.") *See also, Cassino v. Reichhold Chemicals, Inc.,* 817 F.2d 1338 (9th Cir.1987), *cert. denied,* 484 U.S. 1047, 108 S.Ct. 785, 98 L.Ed.2d 870 (1988):

It is clear that front pay awards, like backpay awards, must be reduced by the amount plaintiff could earn using reasonable mitigation efforts.... [T]he plaintiff's duty to mitigate must serve as a control on front pay damage awards. Thus, an award of front pay is intended to be temporary in nature.

*Id.* at 1347.

Thus, courts have often awarded front pay for the limited period of time based upon projections of when the plaintiff should be reasonably expected to be able to obtain employment comparable to that from which he was discharged. *See e.g.,*

*Goss v. Exxon Office Systems Co.,* 747 F.2d 885 (3rd Cir.1984) (the court awarded front pay in lieu of reinstatement for four months, the time that the court determined would be sufficient for plaintiff to reach a position in his new job that was comparable to his former position); *Sowers v. Kemira, Inc.,* 701 F.Supp. 809 (S.D.Ga.1988) (the court awarded the 37 year old plaintiff, who had no college degree but had five years experience in industrial engineering and the equivalent of a two-year degree through in-house training, nine months front pay, finding that period to be sufficient time to obtain an equivalent alternative position).

*See also, Dominic v. Consolidated Edison Company,* 652 F.Supp. 815 (S.D.N.Y. 1986), *aff'd,* 822 F.2d 1249 (2d Cir.1987), *reh. den.,* 44 FEP Cas. 1048 (2d Cir.1987), where the trial court explained its decision to limit front pay to two years as follows:

Equitable factors which courts have considered in deciding whether or not to award front pay include both the age of the plaintiff and his or her reasonable prospects of obtaining comparable employment elsewhere....

These equitable factors are also relevant in determining the amount of front pay to which Dominic is entitled. Dominic was 52 years old at the time the jury reached its verdict. He also had found employment [in a different avocation], although at a salary lower than he had received at Con Ed. Finally, he is highly educated, possessing a law degree, as well as a Masters degree in education administration.... In light of these facts, the Court finds that an award of front pay that assumes Dominic will stay in his present lower paying job and awards him compensation for the difference between that job and what he would have earned at Con Ed until he reached 70 is highly speculative. Moreover, it may easily result in a windfall since Dominic's prospects of obtaining a more lucrative position are good given his academic credentials and his relative youth....

652 F.Supp. at 819–820.

Guided by the principles discussed by the courts cited above, this Court finds that

Plaintiff Stafford is entitled to an award of future damages in lieu of reinstatement. However, the Court does not find that a lump sum award of 23 years of front pay is justified in this case, nor does the Court find that an award of front pay should, as Defendant requests, be arbitrarily cut-off after six months. It appears to the Court that the positions of both parties are arbitrary, highly speculative, and not supported by the evidence at trial.

## C. AN "INSTALLMENT" PAYMENT OF FUTURE DAMAGES AND CONTINUED JUDICIAL MONITORING OF PLAINTIFF'S MITIGATION EFFORTS IS APPROPRIATE IN THIS CASE.

As a starting point, the Court reiterates that front pay is relief in lieu of reinstatement. Plaintiff is only 42 years old. He has a college degree and has had almost 20 years experience in the computer/information processing field. Defendant points out that the U.S. Bureau of Labor Statistics has projected that employment opportunities in the information processing industry will outpace those in any other occupation through the year 2000. The Bureau estimates that computer-related jobs in the manufacturing industry, in particular, are expected to grow at the rate of 20.3%. Plaintiff does not refute the Defendant's job market evidence.

Given Plaintiff's relative youth, his abilities and the projected growth of the job market from which Plaintiff was discharged, the Court finds that it is reasonable to assume that with reasonable effort, Plaintiff could, long before he reaches retirement age, find a job more comparable to his EDS position than his current $10.50 per hour audio-visual production job.

The Court is aware that Plaintiff testified at trial that he now is more interested in pursuing a career in the audio-visual production area, but, as Defendant points out, Plaintiff's personal preference for a job in an industry not nearly as fruitful or remunerative as that in which he has had 20 years of on-the-job experience does not absolve him of his duty to mitigate future losses where, as here, such mitigation is wholly feasible and, as such, would be entirely reasonable.

A prevailing plaintiff in a *Toussaint* case has the right to be made whole for the *actual* losses he has sustained, and will sustain in the future, by virtue of his wrongful discharge. He does not have a right, at 42 years of age, to have his former employer fund his retirement while he pursues avocational interests—which may, or may not be remunerative—off into an unlimited future. Such a result would not only provide a windfall to the plaintiff, but would also eviscerate the make-whole intent of the policy underlying the concept of future damages arising out of a breach of employment contract.[13]

Notwithstanding the Court's belief that Plaintiff should be able to find a better position than the one he has now that would be more comparable to his former EDS position within a reasonable period of time, the Court does not believe that it would be in either party's best interest to arbitrarily pick a cut-off date in the future for an award of front pay.[14] And, as noted, the six-month cut-off date urged by Defendant is, in the Court's view, not only unduly speculative and arbitrary, it is unreasonably harsh.

For that reason, the Court finds a modified version of the "installment front pay" approach taken by the trial court in *Shore v. Federal Express, Corp.*, 777 F.2d 1155 (6th Cir.1985), *on remand*, 49 FEP Cas.

---

**13.** That a large lump sum award of $670,000 in front pay until retirement age would be a windfall for the Plaintiff under these circumstances is supported by Plaintiff's damages expert's admission at trial that such an award could be invested at 9% per year and yield Plaintiff far more in interest alone—without even touching the principal—than Plaintiff was earning in his job.

**14.** The Court acknowledges that fixing a cut-off date for the award is well within its discretion. *See Shore v. Federal Express Corp., supra,* 777 F.2d at 1160, *citing, Goss v. Exxon Office Systems, Inc.,* 747 F.2d 885 (3rd Cir.1984).

1616 (W.D.Tenn.1986) and *affirmed on subsequent appeal*, 875 F.2d 867 (6th Cir. 1989) (unpublished opinion, full text available on WESTLAW 1989 WL 48382, text at 1989 U.S.App. LEXIS 6522), would be best suited to the circumstances of the present action.

*Shore* was a Title VII sex discrimination action involving the discharge of a woman who was formerly a Management By Objectives ("MBO") Program Analyst. Following a bench trial, the District Court found for the plaintiff on the question of liability and awarded her back pay of $88,-944 and five years front pay in the amount of $68,880.[15] The Court's ruling was appealed and the Sixth Circuit affirmed the trial court on the issues of liability and back pay, but remanded the case to the District Court for further findings on the front pay award. 777 F.2d 1155, 1160.

On remand, the District Court vacated its prior five-year front pay award and refashioned the future damages award in an installment formula, "designed to have basic equitable principles such as mitigation of damages". The court ordered the plaintiff to report the amount of her gross earnings from her new job to the defendant every six months, and further ordered that, within 30 days of the defendant's receipt of the plaintiff's report, the defendant was to pay to the plaintiff the amount of gross earnings she could have received over the six month period had she remained in its employ as an MBO Analyst, less the amount of gross earnings she had during received from her new job.[16]

This Court believes that an application of the concept of such an installment payment mechanism is well-suited to this case. However, rather than have the Plaintiff and Defendant handle this matter extra-judicially, the Court will retain jurisdiction over this case to monitor Plaintiff's continued mitigation efforts.[17] The Court believes that a judicially-monitored procedure will avoid future litigation arising out of potential disagreements about the extent of mitigation efforts or the value of Plaintiff's last position with EDS off into the future, and that the monitoring procedure set forth below can be accomplished uncomplicatedly and without undue intrusion upon the time or resources of the parties or the Court. The objective of the Court in fashioning the relief set forth below is to ensure that Mr. Stafford receives the value of the loss of his job off into the future, minus his mitigation, and to ensure that he fulfills his continuing duty to mitigate his losses in the future.

## III. FUTURE DAMAGES AWARD

### A. FUTURE WAGE LOSS DAMAGES

For the foregoing reasons, the Court finds that Plaintiff is entitled to an award of front pay to be disbursed in annual

---

**15.** The District Court's initial ruling in the case is reported at 589 F.Supp. 662 (W.D.Tenn.1984).

**16.** The District Court in *Shore* explained its installment formula as follows:

> Upon a semi-annual basis the plaintiff will report to the defendant the amount of her gross earnings for the period. Within thirty days of the receipt of that report, the defendant will pay to her the amount of gross earnings she could have received if she had been employed as an MBO Analyst for the defendant less the amount of the gross earnings she actually received. From the amount paid to her by the defendant, the defendant should deduct only the amounts required by law, if any, such as withholding and Social Security taxes. Because it has been determined that plaintiff is entitled to reinstatement but it is not feasible, this Court concludes that plaintiff is not to be entitled to

normal employee benefits from the defendant during her period of front pay....
*Shore v. Federal Express, Corp.,* 49 FEP Cas. 1616 (W.D.Tenn.1986), *aff'd,* 875 F.2d 867 (6th Cir.1989).

**17.** The Court notes that the appellate courts in *Ritchie v. Michigan Consolidated Gas Co., supra,* and *Whittlesey v. Union Carbide, supra,* found no abuse of discretion in the trial courts' refusal to exercise continued jurisdiction over front pay cases to monitor mitigation efforts. However, nothing in those cases suggests that a trial court may not properly exercise its discretion and elect to retain jurisdiction to monitor the plaintiff's continued entitlement to front pay. Further, the Court notes that Plaintiff's counsel conceded at the September 13, 1990 hearing that it is within this Court's discretion to order front pay to be paid over time and to retain jurisdiction over the case to monitor such a payment. [See 9/13/90 hearing transcript, p. 23.]

payments beginning one year from the date of the jury's award of back pay, i.e., July 25, 1991, and continuing thereafter annually in an amount equal to what he would have earned had he remained in EDS' employ at his last position, less what he actually earned during the preceding 12 months. Said annual payment shall be based upon the proofs of the value of Plaintiff's loss of employment at EDS[18] and shall be made only after the Court's determination, at the end of each 12 month period (beginning in July 1991), that Plaintiff has made reasonable efforts to mitigate his losses during the preceding year by attempting to obtain a position comparable to his former EDS position.

Plaintiff will submit to the Court a documented report of his earnings for the previous 12 months *and* his continued mitigation efforts during that previous 12-month period. The burden shall be on the Defendant, once Plaintiff submits proof of his previous 12 months earnings and mitigation efforts, to show that, under applicable Michigan law, he has failed to mitigate his losses. The Court will evaluate Plaintiff's mitigation efforts and if the Court finds that he has reasonably attempted to obtain a position more comparable to his former EDS position than his current audio-visual job, he will receive a front pay damages payment encompassing the 12 months. If the Court finds that Plaintiff has failed to exercise reasonable efforts to seek a more comparable job, or if the Court finds that Plaintiff has obtained a position substantially comparable to his former EDS position or that his current employment has been substantially enhanced within the preceding 12 months so as to render it, under applicable law, substantially comparable to his previous EDS position, his front pay payments will cease.

### B. PAYMENT OF LOST VALUE OF 1,120 SHARES OF EDS STOCK

With respect to the value of the 1,120 shares of stock, since it is the Court's intention to put Plaintiff back into the position that he would have been had he not been terminated from the special stock purchase incentive plan, Plaintiff shall receive each year the value of the ten percent of the 1,120 shares of unvested stock repurchased by EDS upon his termination that vests each year. Defendant has represented that the date of vesting of the annual ten percent of shares of stock is December 31.

At the September 13, 1990 hearing, Plaintiff represented that he has already received the value of the stock that he was entitled to that vested in 1987. He has not yet received the value of the shares of stock that have vested thereafter, in 1988 and 1989. The jury, having been satisfied the Plaintiff met his duty to mitigate his losses through the date of trial, Plaintiff shall be entitled to immediate payment of the value of the percent of stock that, but for his termination, would have vested in his favor on December 31, 1988 and December 31, 1989. Further, Plaintiff shall be entitled to payment of the percent of stock that vests on December 31, 1990 and each December 31st thereafter upon the Court's determination, based upon the submission of proofs set forth above in this Section, that he has satisfied his continued duty to mitigate his loss of employment.

Judgment shall be entered accordingly.

---

**18.** Based upon the testimony at trial, Plaintiff was given a "grade" or "level" rating while employed at EDS and the Court, therefore, contemplates that proofs of the value of Mr. Stafford's EDS position off into the future should be based on easily obtainable figures which indicate what the average increases are for employees having the same level of employment as Plaintiff did when he was discharged in 1987. Similarly, in the event that the position that Plaintiff last held at EDS is eliminated, Defendant shall present proof of such job elimination, as well as proof of the value of any position that Plaintiff would have been assigned to, if any, upon elimination of his previously held position.